**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

ROBERT GARCIA-JIMENEZ, AKA
Roberto Carlos Garcia, AKA
Player, AKA Boxer, AKA
Eduardo Garcia,
            *Defendant-Appellant.*

No. 09-50304

D.C. No.
2:09-cr-00449-
RGK-1

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
May 3, 2010—Pasadena, California

Filed October 6, 2010

Before: John T. Noonan, Richard R. Clifton and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Bybee

## COUNSEL

Amanda M. Bettinelli, Assistant U.S. Attorney, Los Angeles, California, for the plaintiff-appellee.

Kathryn A. Young, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

## OPINION

BYBEE, Circuit Judge:

Defendant-Appellant Robert Garcia-Jimenez ("Garcia"), a native and citizen of Mexico, appeals the thirty-seven-month

sentence imposed by the district court following his guilty plea to one count of being an illegal alien found in the United States after deportation, in violation of 8 U.S.C. § 1326(a) and (b)(2). Garcia argues that the district court committed two errors when it calculated his criminal history category under the United States Sentencing Guidelines ("U.S.S.G."): (1) adding two criminal history points under U.S.S.G. § 4A1.1(d), which requires additional points "if the defendant committed the instant offense while under any criminal justice sentence, including . . . parole"; and (2) adding one criminal history point under U.S.S.G. § 4A1.1(e), which requires additional points "if the defendant committed the instant offense less than two years after release from imprisonment on a sentence counted under [U.S.S.G. § 4A1.1](a)." We hold that the district court correctly added two points under § 4A1.1(d) and one point under § 4A1.1(e) and therefore affirm Garcia's sentence.

I

The dates and order of the events leading up to Garcia's instant offense are important to both issues on appeal, and they are undisputed. On December 11, 2001, Garcia was convicted in Los Angeles County Superior Court of second-degree robbery, in violation of California Penal Code § 211. He was sentenced to three years' imprisonment.

Garcia was first admitted into the California Department of Corrections ("CDC") on January 23, 2002. He was paroled on June 29, 2004. That same day, Garcia was deported for the first time. On December 23, 2005 (having returned to the United States at some point), he was sent back to the CDC again for violation of his parole. He was then paroled a second time on June 20, 2006, and then deported a second time that same day. He again returned to the United States at some point. On December 3, 2006, Garcia was arrested by the Los Angeles Police Department ("LAPD") for first-degree residential burglary, in violation of California Penal Code § 459,

and a case was filed against him in Los Angeles County Superior Court. On April 20, 2007, he was again returned to the CDC for violation of his parole, and was then paroled a third time on August 4, 2007. On August 14, 2007, Garcia was arraigned on the residential burglary charge and remanded to custody. On August 28, 2007, the residential burglary charge against Garcia was dismissed because the prosecution was unable to proceed.

On November 5, 2007, Garcia began working at a community service program called "Homeboy Industries."[1] On January 15, 2008, Garcia was arrested by the LAPD for first-degree residential burglary under California Penal Code § 459, for which no court filing has been completed. On January 18, 2008, Garcia's first term of employment at Homeboy Industries ended. On June 19, 2008, Garcia was returned to the CDC for a third violation of his parole relating to the original robbery charge, and then discharged a fourth time on June 28, 2008, because the statutory maximum on that charge had been reached. Garcia was employed by Homeboy Industries a second time from June 30, 2008, until September 20, 2008. This brings us to the instant offense. On April 2, 2009, Garcia was in the custody of the LAPD,[2] which then notified the Immigration and Customs Enforcement ("ICE") of Garcia's arrest. On April 6, 2009, Garcia was transferred to ICE custody. On May 8, 2009, the government filed an information charging Garcia with having been an illegal alien found in the United States following deportation, in violation of 8 U.S.C. § 1326(a) and (b)(2). The indictment also alleged that at least one of Garcia's deportations occurred subsequent to

---

[1]Homeboy Industries is a program intended to assist at-risk youths and gang members through a variety of services, including counseling, tutoring, employment, and free tattoo removal. Wikipedia, *Homeboy Industries*, *available at* http://en.wikipedia.org/wiki/Homeboy_Industries (last visited June 10, 2010).

[2]The Presentence Investigation Report ("PSR") does not indicate precisely why Garcia was in the LAPD's custody.

Garcia's conviction for an "aggravated felony," namely the second-degree robbery conviction in 2001.

Garcia pleaded guilty to the charge in the information pursuant to a binding plea agreement with the government. This agreement contained a stipulation by the parties that the district court should impose a sentence equal to the low end of the applicable Sentencing Guidelines range determined by a total offense level of seventeen (agreed to by the parties) and "the criminal history category calculated by the court in accordance with Chapter 4 of the Sentencing Guidelines."

Pursuant to this agreement, the United States Probation Office ("USPO") submitted a Presentence Investigation Report ("PSR") addressing only Garcia's criminal history. The original PSR determined that Garcia fell within criminal history category III based on five criminal history points.[3] However, in response to the government's position paper regarding sentencing, the USPO submitted a Modified Presentence Investigation Report ("MPSR") and Addendum determining that Garcia fell within criminal history category IV based on seven criminal history points.

For the purposes of this appeal, the main difference between the two reports is that the USPO accepted the government's position that Garcia "committed the instant [illegal reentry] offense[—on April 2, 2009—]less than two years after release from imprisonment[—on June 28, 2008—]on a sentence counted under [U.S.S.G. § 4A1.1(a), his sentence for the robbery conviction]," U.S.S.G. § 4A1.1(e), and thus the MPSR added two criminal history points under § 4A1.1(e). However, the USPO declined to add two additional criminal history points under U.S.S.G. § 4A1.1(d), which applies "if the defendant committed the instant offense while under any criminal justice sentence, including . . . parole." Contrary to the government's position, the USPO "used April 2, 2009,"

---

[3]The basis for these five points is not relevant to this appeal.

the date Garcia had been last arrested by the LAPD (and a day on which he was not on parole), "as the date on which Jimenez first committed this continuing[4] [illegal reentry] offense." The USPO found that the government had not proven by a preponderance of the evidence that Garcia first committed the continuing illegal reentry offense on April 20, 2007, a day on which he was on parole, because although Garcia was not deported after that date, Garcia could have returned to Mexico and later reentered the United States during one of the periods in which he was not incarcerated.

Both the government and Garcia objected to the MPSR in memoranda filed with the district court. The government argued that the evidence supported a finding that Garcia had been in the United States unlawfully since at least April 20, 2007, and that therefore an addition of two points under U.S.S.G. § 4A1.1(d) was appropriate. Garcia did not dispute the facts in the MPSR, but argued that the MPSR incorrectly added two points under U.S.S.G. § 4A1.1(e) because Garcia's imprisonments following his parole violations should not be used to determine when Garcia was "release[d] from imprisonment on a sentence counted under [U.S.S.G. § 4A1.1(a)]."

At Garcia's sentencing hearing on June 15, 2009, the district court stated:

> In this matter the Court makes some findings: First of all, as to [U.S.S.G. § 4A1.1(d),[5]] Counsel, you're right, it is by a preponderance of the evidence, and

---

[4]The offense of being "found in the United States" after deportation, 8 U.S.C. § 1326(a), "is a continuing offense which continues so long as the alien remains in the country. That is, the offense commences with the illegal entry, but is not completed until discovery." *United States v. Reyes-Pacheco*, 248 F.3d 942, 946 (9th Cir. 2001) (quotation marks and citation omitted).

[5]The district court mistakenly referred to § 4A1.1(e) during its discussion of § 4A1.1(d), and mistakenly referred to § 4A1.1(d) during its discussion of § 4A1.1(e).

the only evidence we have is, there's nothing to show that he left during that period of time; and if we're going by a standard other than the preponderance of the evidence, I think defense counsel would have a much stronger argument; but if I had to weigh whether or not he did or did not go back outside of the country for any period of time, based on everything I've had here, I would say that it would be towards 'he didn't.'

Accordingly, the district court added two criminal history points under U.S.S.G. § 4A1.1(d) on the ground that Garcia first committed the instant offense while on parole. The court also held that U.S.S.G. § 4A1.1(e) applied because the two years between Garcia's release from imprisonment and the time he committed the instant offense "r[a]n from the point when [his] sentence [wa]s completed, and that is after the violation of the [parole]." Accordingly, the court added an additional criminal history point under U.S.S.G. § 4A1.1(e),[6] for a total of eight criminal history points, placing Garcia within criminal history category IV. Based on that criminal history category and the parties' stipulated offense level of seventeen, the district court sentenced Garcia to thirty-seven months' imprisonment (the low end of the Guidelines range) followed by three years' supervised release. Garcia timely appealed both the § 4A1.1(d) and the § 4A1.1(e) determinations to this court.

## II

We review the district court's interpretation of the Sentencing Guidelines *de novo*, *see United States v. Reyes-Pacheco*, 248 F.3d 942, 945 (9th Cir. 2001), and its findings of fact for clear error, *see United States v. Howard*, 894 F.2d 1085, 1087

---

[6]The Guidelines provide that if two points are added under U.S.S.G. § 4A1.1(d), only one point (rather than two) is added under U.S.S.G. § 4A1.1(e). *See* U.S.S.G. § 4A1.1(e).

(9th Cir. 1990). Garcia argues that the district court erred in adding two criminal history points under U.S.S.G. § 4A1.1(d) and in adding one criminal history point under U.S.S.G. § 4A1.1(e). We address each of these arguments in turn.

A

**[1]** U.S.S.G. § 4A1.1(d) provides: "Add 2 points if the defendant *committed the instant offense while under any criminal justice sentence*, including probation, *parole*, supervised release, imprisonment, work release, or escape status." (Emphases added.) There is no question that Garcia was "under [a] criminal justice sentence" (parole) on April 20, 2007, the day on which he violated his parole a second time and was returned to the CDC for the third time. And there is no question that Garcia was *not* on parole (and therefore not "under [a] criminal justice sentence") on April 2, 2009, the day of his most recent arrest by the LAPD. Thus, our task is to determine on which of these two dates Garcia "committed the instant offense"—if April 20, 2007, then U.S.S.G. § 4A1.1(d) applies; if April 2, 2009, it does not apply. This inquiry implicates the unique nature of Garcia's "instant offense."

**[2]** The "instant offense" is Garcia's conviction under a federal statute punishing a previously deported alien who "is at any time found in[ ] the United States" without the permission of the Attorney General. 8 U.S.C. § 1326(a)(2). "We repeatedly have held that the crime of being found in the United States after deportation is a continuing offense which continues *so long as the alien remains in the country*. That is, the offense commences with the illegal entry, but is not completed until discovery." *Reyes-Pacheco*, 248 F.3d at 946 (emphasis added) (quotation marks and citation omitted). Thus, if Garcia has been continuously in the country since April 20, 2007, then he "committed the instant offense" on that date, and thus committed this offense "while under any

criminal justice sentence, including . . . parole." U.S.S.G. § 4A1.1(d).

In the district court, the government bore the burden of proving Garcia's continuous presence in the United States since April 20, 2007, by a preponderance of the evidence. *See Howard*, 894 F.2d at 1090. The district court found that Garcia had been continuously present in the country since that date. In reviewing this finding, we must first determine the appropriate standard of review. A district court's findings will be affirmed absent clear error when the inquiry is "essentially factual." *See United States v. Hinkson*, 585 F.3d 1247, 1259 (9th Cir. 2009) (en banc). By contrast, if resolution of an issue requires us to "exercise judgment about the values that animate legal principles," the question is one of law and should be reviewed de novo. *Id.* Accordingly, if Garcia were challenging the district court's continuous presence finding on the grounds that it applied a legally incorrect definition of "continuous," we would review the issue de novo. Here, however, the district court's determination rested entirely on the factual question of whether Garcia ever physically left the United States to return to Mexico. Accordingly, we review this determination under the clear error standard. *See Howard*, 894 F.2d at 1087.

We hold that the district court did not clearly err in finding that the government had proven Garcia's continuous presence by a preponderance of the evidence. First, the government submitted evidence accounting for Garcia's presence in the United States for a large portion of time between his return to the CDC on April 20, 2007, and his most recent arrest by the LAPD on April 2, 2009. Garcia was in the CDC, and therefore certainly in the country, between April 20, 2007, and August 4, 2007, the date on which Garcia was paroled for a third time. Only ten days later, on August, 14, 2007, he was arraigned on his first residential burglary charge and remanded to custody. Soon after that (and thus soon after his release from custody), on November 5, 2007, Garcia began

working at Homeboy Industries, where he remained until at least January 18, 2008, when he finished his first term of employment. Meanwhile, on January 15, 2008, he was arrested by the LAPD for burglary for the second time. He was recommitted to the CDC on June 19, 2008, for violation of his parole and, two days after his discharge on June 28, 2008, was again employed by Homeboy Industries until September 20, 2008. He was then arrested by the LAPD on April 2, 2009.

The government also submitted evidence to the district court that Garcia had no reason to leave the United States. Garcia had lived in the United States since he was five years old, had children who were United States citizens, had a fiancé who lived in the United States, and had come back to the United States both times after he was deported. Moreover, because traveling to Mexico and returning would have subjected Garcia to the risk of being detected, the government argued that "it [wa]s illogical to assume that defendant would voluntarily leave the county while residing here illegally." *Id.*

Garcia responds that the government's evidence failed to prove that Garcia did not leave the country on the dates between his contacts with law enforcement, and that the government cannot meet its "burden by showing that Mr. Garcia-Jimenez was in the United States on specific dates" after April 20, 2007. He argues that such a line of reasoning amounts to "mere speculation and conjecture." He also notes "the frequency with which individuals cross the border to Mexico and back undetected."

**[3]** It is true that the government's evidence does not account for Garcia's presence in the United States at every moment since April 20, 2007, and it is indeed conceivable that Garcia could have returned to Mexico at some point in between the dates of his contacts with law enforcement. However, the government did not need to prove with absolute certainty that Garcia had been in the country continuously since

April 20, 2007; the government's burden was only to demonstrate continuous presence by a preponderance of the evidence. By accounting for Garcia's presence in the country for a major portion of the time since his return to the CDC on April 20, 2007, by demonstrating that Garcia had no reason to leave the United States during that time, and by showing that it would have been illogical for Garcia to leave the United States, the government satisfied its burden, particularly since Garcia offered no evidence at all to counter the government's evidence other than general findings regarding Mexican aliens frequently crossing the border. At the very least, the district court's finding was not clearly erroneous.

**[4]** In sum, the district court did not clearly err in finding that Garcia had been continuously in the United States from April 20, 2007, until his most recent arrest on April 2, 2009. And because the offense of being found in the United States after deportation "continues so long as the alien remains in the country," *Reyes-Pacheco*, 248 F.3d at 946, Garcia "committed the instant offense" on April 20, 2007, a date on which he was "under any criminal justice sentence, including . . . parole," U.S.S.G. § 4A1.1(d). Thus, the district court correctly added two criminal history points under U.S.S.G. § 4A1.1(d).

B

U.S.S.G. § 4A1.1(e) provides:

> Add 2 points if the defendant committed the instant offense *less than two years after release from imprisonment on a sentence counted under [U.S.S.G. § 4A1.1](a)* or (b) or while in imprisonment or escape status on such sentence. If 2 points are added for [U.S.S.G. § 4A1.1](d), add only 1 point for this item.

(Emphasis added.) Section 4A1.1(a), in turn, provides: "Add 3 points for each prior sentence of imprisonment exceeding one year and one month."

**[5]** In 2001, Garcia was convicted of second-degree robbery and sentenced to three years' imprisonment. This is indisputably "a sentence counted under [U.S.S.G. § 4A1.1](a)." U.S.S.G. § 4A1.1(e). And, as discussed above, Garcia "committed the instant offense" on April 20, 2007. *Id.* Thus, our task is to determine whether April 20, 2007, is "less than two years after [Garcia's] release from imprisonment on [his robbery] sentence," which requires us to determine when exactly Garcia was "release[d] from imprisonment on [this] sentence" for the purposes of U.S.S.G. § 4A1.1(e).

As discussed above, Garcia was first admitted into the CDC for his robbery sentence on January 23, 2002, and first paroled on June 29, 2004. Garcia was returned to the CDC for violation of his parole on December 23, 2005, released on parole again on June 20, 2006, returned to the CDC again for violation of parole on April 20, 2007, released on parole a third time on August 4, 2007, returned to the CDC for violation of parole on June 19, 2008, and then discharged a final time on June 28, 2008, because the statutory maximum had been reached.

Garcia argues that his imprisonments following his parole violations should not be used to determine when Garcia was "release[d] from imprisonment on [his robbery] sentence," and that therefore Garcia was "release[d] from imprisonment on [this] sentence" on June 29, 2004, the date of his first parole release. This date is more than two years before Garcia "committed the instant offense" on April 20, 2007, and thus acceptance of Garcia's argument would mean that the district court erred in adding a criminal history point under U.S.S.G. § 4A1.1(e). The government argues, and the district court held, that Garcia's imprisonments following his parole violations count for the purposes of determining when Garcia was "release[d] from imprisonment on [his robbery] sentence." Accepting this argument would mean that Garcia "committed the instant offense less than two years after release from imprisonment on [this] sentence," because April 20, 2007, is

less than two years after June 20, 2006, the date of Garcia's second release on parole.[7] We review this legal issue *de novo*, *see Reyes-Pacheco*, 248 F.3d at 945, and, for the reasons that follow, we hold that imprisonment following parole violations counts for the purposes of determining the date of a defendant's "release from imprisonment" under U.S.S.G. § 4A1.1(e).

**[6]** Section 4A1.1(e) itself does not make clear how the timing of a defendant's "release from imprisonment" is determined. However, a neighboring provision, U.S.S.G. § 4A1.2 (k)(2)(A), answers this question. Section 4A1.2(k)(2)(A) provides: "Revocation of probation, *parole*, supervised release, special parole, or mandatory release *may affect the points for § 4A1.1(e) in respect to the recency of last release from confinement*." (Emphases added.) Section 4A1.2(k)(2)(A) is hardly a model of clarity, but we see no possible way that revocation of parole *could* "affect the points for § 4A1.1(e)" other than by changing the date of the defendant's "release from imprisonment" under that provision. Thus, this provision demonstrates that, if a defendant is imprisoned for violating his parole relating to a prior sentence counted under U.S.S.G. § 4A1.1(a), he is "release[d] from imprisonment on [that] sentence" on the date that he is "last release[d] from confinement" for the parole violation.

Garcia has three responses. First, he points out that U.S.S.G. § 4A1.1(e) applies if the instant offense was committed "less than two years after release from imprisonment

---

[7]Because of the continuing nature of Garcia's instant offense, Garcia also "committed the instant offense" on April 2, 2009, the date of his most recent arrest by the LAPD. This date is less than two years after June 28, 2008, the date of Garcia's final discharge from prison on the robbery conviction. Thus, regardless of whether we consider Garcia to have "committed the instant offense" on April 2, 2009, or on April 20, 2007, accepting the government's interpretation of U.S.S.G. § 4A1.1(e) would mean that Garcia "committed the instant offense less than two years after release from imprisonment on [his robbery] sentence."

on a sentence *counted under (a)*." (Emphasis added.) A sentence "count[s] under (a)" if it "exceed[s] one year and one month." U.S.S.G. § 4A1.1(a). Since Garcia's second-degree robbery conviction resulted in a three-year sentence, his subsequent parole violations did not affect whether his sentence counted under U.S.S.G. § 4A1.1(a). Thus, he argues, his imprisonments resulting from his parole violations were not "imprisonment[s] on a sentence counted under (a)," and therefore his releases from these imprisonments were not "release[s] from imprisonment[s] on a sentence counted under (a)."

Garcia's argument misses the point. The question is not whether Garcia's imprisonments for his parole violations *in themselves* counted under U.S.S.G. § 4A1.1(a). The question is whether, for the purposes of U.S.S.G. § 4A1.1(e), these imprisonments are *part of* the original "sentence counted under (a)"—his sentence for second-degree robbery—such that his releases from these imprisonments are "release[s] from imprisonment *on a* sentence counted under (a)." U.S.S.G. § 4A1.1(e) (emphasis added). And on this point, once again, U.S.S.G. § 4A1.2(k)(2)(A) states that "[r]evocation of . . . parole . . . may affect the points for § 4A1.1(e) in respect to the recency of last release from confinement." This provision demonstrates that Garcia's parole violation imprisonments qualify as "imprisonment[s] *on a* sentence counted under (a)" because the Guidelines consider these imprisonments part of the original sentence for purposes of U.S.S.G. § 4A1.1(e).[8]

---

[8]This conclusion is bolstered by U.S.S.G. § 4A1.2(k)(1), which provides: "In the case of a prior revocation of . . . parole, . . . add the original term of imprisonment to any term of imprisonment imposed upon revocation. The resulting total is used to compute the criminal history points for § 4A1.1(a), (b), or (c), as applicable." Although this provision affects only the *length* of a prior sentence under U.S.S.G. § 4A1.1(a), (b), and (c), rather than the recency of the defendant's *release* from imprisonment under U.S.S.G. § 4A1.1(e), it provides further support for our conclusion that parole violation imprisonments are considered part of the original sentence for the purposes of U.S.S.G. § 4A1.1.

Second, Garcia relies on U.S.S.G. § 4A1.2(a)(1), which states: "The term 'prior sentence' means any sentence previously imposed *upon adjudication of guilt*, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." (Emphasis added.) Garcia correctly points out that a California parole violation sentence is not imposed "upon adjudication of guilt." *See In re Eddie M*., 73 P.3d 1115, 1129-30 (Cal. 2003) ("[R]evocation proceedings, in and of themselves, do not concern guilt of any criminal charges . . . . [Parole violation proceedings] are not part of any criminal prosecution. In other words, revocation involves no criminal guilt . . . ." (quotation marks and citation omitted)). Thus, he argues that parole violation sentences are not part of the original sentence under U.S.S.G. § 4A1.1(e).

Garcia's second response suffers from a similar flaw to his first. The question is not whether Garcia's imprisonments for violation of parole are in themselves "prior sentence[s]" under U.S.S.G. § 4A1.2(a)(1)—it is clear that they are not. *See id.* But it is also clear that his *original* three-year sentence *is* a "prior sentence," and that this original sentence is "a sentence counted under (a)" for the purposes of U.S.S.G. § 4A1.1(e). The relevant question is the date of Garcia's "*release* from imprisonment *on*" that original "sentence counted under (a)." And once again, the only provision addressing how that date of release is to be determined is U.S.S.G. § 4A1.2(k)(2)(A), which suggests that a sentence following revocation of parole is part of the original sentence for the purposes of determining the defendant's release date under U.S.S.G. § 4A1.1(e).

Finally, Garcia argues that U.S.S.G. § 4A1.1(e) is at least ambiguous enough that we should invoke the rule of lenity in his favor. *See United States v. Fuentes-Barahona*, 111 F.3d 651, 653 (9th Cir. 1997) ("Doubts about the correct interpretation of [the Sentencing Guidelines] should be resolved according to the rule of lenity."); *United States v. Martinez*, 946 F.2d 100, 102 (9th Cir. 1991) (noting that "the rule of

lenity requires that we infer the rationale most favorable to the [defendant] and construe the guidelines accordingly").

However, the Supreme Court has held that "[t]he simple existence of some . . . ambiguity . . . is not sufficient to warrant application of [the rule of lenity]." *Muscarello v. United States*, 524 U.S. 125, 138 (1998). Rather, "[t]o invoke the rule, we must conclude that there is a *grievous* ambiguity or uncertainty in the [Guidelines]," to the point that, "after seizing everything from which aid can be derived, . . . we can make *no more than a guess* as to what [the Sentencing Commission] intended." *Id.* at 138-39 (emphases added) (quotation marks omitted) (omission in original). We believe that the Guidelines speak in clear enough terms that Garcia's case is not a situation of "grievous" ambiguity. *See* U.S.S.G. § 4A1.2(k)(2)(A) ("Revocation of . . . parole . . . may affect the points for § 4A1.1(e) in respect to the recency of last release from confinement.").

**[7]** In sum, Garcia's imprisonments for his parole violations count for the purposes of determining when he was "release[d] from imprisonment on [his robbery] sentence." Thus, Garcia was "release[d] from imprisonment on [that] sentence" on June 20, 2006, less than two years before April 20, 2007, the date he "committed the instant offense." Accordingly, we conclude that Garcia "committed the instant offense less than two years after release from imprisonment on a sentence counted under [U.S.S.G. § 4A1.1](a)," and hold that the district court correctly added one criminal history point under U.S.S.G. § 4A1.1(e).

### III

Because the district court correctly added two criminal history points under U.S.S.G. § 4A1.1(d) and one criminal history point under U.S.S.G. § 4A1.1(e), we affirm Garcia's sentence.

AFFIRMED.