FILED
United States Court of Appeals
Tenth Circuit

November 27, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JUAN JOSE HUERTA,

      Defendant-Appellant.

No. 12-5058
(D.Ct. No. 4:11-CR-00170-JHP-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

Before **PORFILIO** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

      After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

      Appellant Juan Jose Huerta pled guilty to reentry of a removed alien in

---

    [*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

violation of 8 U.S.C. § 1326(a) and (b). The district court sentenced him to thirty months imprisonment. On appeal, Mr. Huerta contends his sentence is both procedurally and substantively unreasonable.[1] We exercise our jurisdiction pursuant to 18 U.S.C. § 3742(a)(2) and 28 U.S.C. § 1291 and affirm.

## I. Factual and Procedural Background

On September 12, 1993, Mr. Huerta, a Mexican citizen, pled guilty in federal district court to an aggravated felony for possession with intent to distribute cocaine, for which he received a twelve-month sentence and three-year term of supervised release. Following sentencing, the Immigration and Naturalization Service took him into custody and deported him on October 27, 1994.

---

[1] Through counsel, Mr. Huerta recites numerous facts in his opening brief on appeal but fails to cite to the record in support of such facts, as required under Federal Rule of Appellate Procedure 28(e) and Tenth Circuit Rules 28.1 and 28.2. We remind counsel of his responsibility to provide the applicable and correct record references in support of the appellate brief. *See generally United States v. Rodriguez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997) (explaining court will not sift through the record in absence of essential references to the record in a party's brief); *United States v. Easter*, 981 F.2d 1549, 1555 n.4 (10th Cir. 1992) (stating we generally will not consider factual allegations and arguments unsupported by citation to the record). In this instance, we are able to readily review the record to ascertain support for such facts. However, counsel for Mr. Huerta is strongly reminded of his responsibility to provide record references in future filings before this court and cautioned failure to do so will result in our declining to consider factual allegations unsupported by reference to the record.

On June 18, 2011, authorities arrested Mr. Huerta over another incident involving cocaine, after which he admitted he illegally reentered the United States approximately one year after his deportation. He made the same admission during his plea hearing. Following his guilty plea to reentry of a removed alien in violation of 8 U.S.C. § 1326(a) and (b), a probation officer calculated his sentence using the applicable 2011 United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). The probation officer assessed his base offense level at eight under U.S.S.G. § 2L1.2, for violation of 8 U.S.C. § 1326(a), and increased it twelve levels under U.S.S.G. § 2L1.2(b)(1)(B), based on his prior 1993 drug trafficking conviction. A three-level reduction for acceptance of responsibility resulted in a total offense level of seventeen, which, together with Mr. Huerta's criminal history category of III, resulted in an advisory Guidelines range of thirty to thirty-seven months imprisonment. In assessing Mr. Huerta's criminal history category, the probation officer assessed a total of three criminal history points under U.S.S.G. § 4A1.1(a), for his 1989 open container conviction and 1993 drug trafficking conviction, as well as two points under § 4A1.1(d), based on the fact he committed the instant offense while serving a three-year term of supervised release which began when he illegally reentered the United States.

Mr. Huerta objected to the presentence report, contesting the calculation of his sentence and arguing for a downward departure and variance. Specifically, he

argued his criminal history category was over-represented because his convictions were too old to be counted and he was not serving a suspended sentence when he was arrested for the instant offense. He also suggested our decision in *United States v. Villarreal-Ortiz*, 553 F.3d 1326 (10th Cir. 2009), which supported the points assessed for violation of his suspended sentence, has been superceded by Amendments 742 and 756 to the Guidelines.[2]

Mr. Huerta also requested a four-level reduction in his offense level on fairness grounds, given the fast-track program in the district of Oklahoma did not take effect until a few months after his charge for illegal reentry. In addition, Mr. Huerta argued his cultural assimilation, work history, family history, and personal characteristics warranted a downward variance. In support, Mr. Huerta explained he has been employed in his wife's electric motor business for ten years; is a good husband and father to his wife and three children, who are all United States citizens; and has been a "model citizen," other than his cocaine problem for which he intends to get support from relatives in the Tulsa area.

Mr. Huerta renewed these arguments at his sentencing hearing. The district

---

[2] In *Villarreal-Ortiz*, we held "the crime of being 'found' in the United States is a continuing offense, and in the case of surreptitious entry, that crime is first committed when the defendant voluntarily reenters the country and continues to be committed until the defendant is 'found.'" *Id.* at 1330.

court found Mr. Huerta's criminal history was not over-represented, explaining Mr. Huerta's 1995 illegal reentry into the United States constituted the commencement of the instant illegal reentry offense for the purpose of calculating his criminal history category, rather than the date authorities discovered him in the United States. As a result, it explained, any sentence of imprisonment exceeding one year and one month, imposed with fifteen years of the commencement of the instant offense, is counted in calculating his criminal history category, including both his 1989 and 1993 convictions. Similarly, it determined his criminal history category properly included the fact Mr. Huerta violated the term of supervised release, given he began serving it when he illegally reentered the United States in 1995, and it rejected his argument the holding in *Villarreal-Ortiz* is no longer good law based on Amendments 742 and 756 to the Guidelines. In addition, the district court found Mr. Huerta's prior 1993 drug conviction made him ineligible for a four-level downward departure under the fast-track program, regardless of when it became effective. The district court also determined Mr. Huerta did not meet the required factors for cultural assimilation. Finally, before imposing the sentence, it considered Mr. Huerta's counsel's argument for a variant sentence based on the fact he was beaten in jail due to his past cooperation with the Government, had a hernia operation as a result, and spent nine months in solitary confinement for his own protection. After considering the parties' arguments, together with the 18 U.S.C. § 3553(a)

sentencing factors, the district court determined a below-Guidelines-range sentence was not warranted. It then sentenced Mr. Huerta at the low end of the Guidelines range to thirty months imprisonment.

## II. Discussion

Mr. Huerta now appeals his sentence on many of the same grounds presented to the district court, arguing his sentence is procedurally and substantively unreasonable. He continues to claim his criminal history is over-represented based on the age of his prior convictions, the fact he was not on supervised release when found in the United States, and his perceived unfairness of the fast-track program offense-level reduction not being applied to him. He also focuses on his cultural assimilation as the main reason meriting a downward variance, together with the fact his illegal reentry was motivated by "family ties." He also suggests a downward variance is warranted given the beatings, hernia operation, and solitary confinement he experienced.

We review a sentence for reasonableness, using a deferential abuse of discretion standard. *See United States v. Smart*, 518 F.3d 800, 803, 806 (10th Cir. 2008). Our reasonableness review "includes both a procedural component, encompassing the method by which a sentence was calculated, as well as a substantive component, which relates to the length of the resulting sentence." *Id.*

at 803 (internal quotation marks and citation omitted).  In considering the district court's application of the Guidelines, we review factual findings for clear error and legal determinations de novo.  *See United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006).  Our substantive review involves "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in [18 U.S.C.] § 3553(a)."  *United States v. Sayad,* 589 F.3d 1110, 1116 (10th Cir. 2009) (internal quotation marks and citation omitted).  In reviewing a district court's sentence for substantive reasonableness under the § 3553(a) factors, we give substantial deference to the district court because it has an unquestionable institutional advantage, involving greater familiarity with individual cases and defendants, to consider whether the facts of the case justify a variance under § 3553(a).  *See id.*; *United States v. Rita*, 551 U.S. 338, 350 (2007).  Moreover, if the sentence is within the correctly-calculated Guidelines range, it is presumptively reasonable, and a defendant must rebut this presumption by demonstrating that the sentence is unreasonable in light of the other sentencing factors laid out in § 3553(a).  *See Kristl*, 437 F.3d at 1054.

We begin our discussion by clarifying that a sentence above or below the recommended Guidelines range, based on an application of certain Guidelines, is referred to as a "departure," while a sentence above or below the recommended Guidelines range through application of the sentencing factors in 18 U.S.C.

§ 3553(a) is called a "variance." *See United States v. Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007). Mr. Huerta's appeal contains implicit and explicit references to circumstances and Guidelines provisions typically utilized in requesting a downward "departure." These include application of the fast-track program under U.S.S.G. § 5K3.1; "family ties" pursuant to § 5H1.6; and cultural assimilation under § 2L1.2, application note 8. To the extent Mr. Huerta is continuing to argue for a downward departure by reference to these Guidelines, we lack "jurisdiction ... to review a district court's discretionary decision to deny a motion for downward departure on the ground that a defendant's circumstances do not warrant the departure" ... "unless the court unambiguously states that it lacks such discretion," which is not the situation here. *United States v. Sierra-Castillo*, 405 F.3d 932, 936 (10th Cir. 2005). However, even though we lack jurisdiction to review the denial of a downward departure, we retain jurisdiction to review his sentence for reasonableness under the § 3553(a) factors, taking into account the asserted grounds for departure when conducting a reasonableness review, which may also include whether a sentence is imposed in violation of the law. *See United States v. Chavez-Diaz*, 444 F.3d 1223, 1229 (10th Cir. 2006). On these grounds, we consider Mr. Huerta's arguments relating to a downward departure.

As the district court explained, the crime of being a deported alien found in

the United States is considered a continuing offense and is first committed when the defendant voluntarily reenters the United States. *See Villarreal-Ortiz*, 553 F.3d at 1330. In this case, Mr. Huerta admitted he illegally reentered the United States sometime in 1995, and therefore, the instant crime commenced in 1995. In addition, as the district court explained, pursuant to U.S.S.G. § 4A1.2(e)(1) and (2), Mr. Huerta's 1989 and 1993 convictions qualify for the purpose of calculating his criminal history category, and we cannot say the district court misapplied the Guidelines or otherwise miscalculated his sentence for the purpose of finding his sentence procedurally unreasonable.

In addition, Amendment 742, which eliminated recency points under § 4A1.1, became effective November 1, 2010, and is not retroactive. *See United States v. Randall*, 666 F.3d 1238, 1239 (10th Cir. 2011). Therefore, Amendment 742 does not apply to Mr. Huerta's prior convictions, and because he was sentenced under the 2011 Guidelines, which no longer include recency points, it is not applicable to his instant sentence either. *Compare* U.S.S.G. § 4A1.1 (2011) *with* U.S.S.G. App. C., Vol. 1, amend. 742 (2010). With respect to Amendment 756, which became effective on November 1, 2011, it amended Guidelines § 5D1.1 by adding a provision stating, "a court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after

imprisonment." U.S.S.G. App. C., Vol. 1, amend. 756 (2011). In this case, the district court did not impose a term of supervised release on Mr. Huerta so it does not apply to his instant sentence. With respect to his prior three-year term of supervised release for his 1993 drug conviction, the amendment is not retroactive as it is not specifically listed in Guidelines § 1B1.10(c). *See Randall*, 666 F.3d at 1240 (explaining Guidelines amendments are applied retroactively only when they are specifically identified in § 1B1.10(c)). As a result, we agree with the district court's conclusion that these amendments have no effect on Mr. Huerta's instant sentence, and therefore, it did not misapply the law and these amendments do not affect the procedural reasonableness of his sentence.

We also reject Mr. Huerta's argument the district court was required to give him a variant sentence under the fast-track program provided in Guidelines § 5K3.1 because the program was implemented just a few months after he was sentenced.[3] First, Mr. Huerta has provided no legal authority showing the program maybe applied retroactively. However, even if it applies retroactively, he has not asserted or shown he meets the eligibility criteria for the program, including, as the district court pointed out, whether his prior conviction for drug

---

[3] Section 5K3.1 states, "[u]pon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides." *See* U.S.S.G. § 5K3.1.

trafficking disqualifies him for the program. *See United States v. Garcia-Ugarte*, 688 F.3d 314, 317 (7th Cir. 2012) (holding downward departures in districts utilizing them is not automatic, and therefore, defendant's criminal history is an appropriate factor for the district court to consider); *United States v. Lopez-Macias*, 661 F.3d 485, 494-95 (10th Cir. 2011) (holding burden is on defendant to show he qualifies for fast-track sentence).

With regard to Mr. Huerta's reference to "family ties" warranting a reduction in his sentence,[4] a reasonableness examination establishes the district court considered Mr. Huerta's family circumstances under § 3553(a) in sentencing him to a Guidelines-range sentence, and he has not carried his burden in rebutting the presumption his sentence is substantively reasonable by showing his family circumstance is atypical of others convicted of the same crime and receiving a similar sentence.

Similarly, § 2L1.2, application note 8, allows for a "downward departure" based on "cultural assimilation," over which we also have no jurisdiction. However, cultural assimilation can be considered in determining whether to vary

---

[4] As previously mentioned, U.S.S.G. § 5H1.6 regarding "family ties" applies to downward departures and states, in part, "[i]n sentencing a defendant convicted of an offense ... family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted."

from the advisory Guidelines range under 18 U.S.C. § 3553(a)(1), although such cultural ties must still be weighed against the other § 3553(a) factors. *See United States v. Galarza-Payan*, 441 F.3d 885, 889 (10th Cir. 2006). In this case, we agree with the district court that Mr. Huerta failed to carry his burden in establishing the requisite criteria for cultural assimilation,[5] and therefore, even when the issue of cultural assimilation is considered in terms of the other § 3553(a) sentencing factors, Mr. Huerta has not carried his burden of rebutting the presumption his sentence is substantively reasonable.

Finally, in regards to the beating, injury, and solitary confinement of which Mr. Huerta complains as a result of his assistance in the prosecution of another, the district court considered these arguments before imposing a sentence at the low end of the Guidelines range. While these circumstances are indeed unfortunate, we give deference to the district court, which had greater familiarity with Mr. Huerta and his case in determining whether the facts of the case justify a

---

[5] These criteria include: "(1) the age in childhood at which the defendant began residing continuously in the United States, (2) whether and for how long the defendant attended school in the United States, (3) the duration of the defendant's continued residence in the United States, (4) the duration of the defendant's presence outside the United States, (5) the nature and extent of the defendant's familial and cultural ties inside the United States, and the nature and extent of such ties outside the United States, (6) the seriousness of the defendant's criminal history, and (7) whether the defendant engaged in additional criminal activity after illegally reentering the United States." *See* U.S.S.G. § 2L1.2, cmt. n.8.

variance under § 3553(a).  Under the circumstances presented, Mr. Huerta has not sufficiently rebutted the presumption his within-Guidelines-range sentence is substantively reasonable.

## III.  Conclusion

For these reasons, we **AFFIRM** Mr. Huerta's sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge