**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**February 8, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSE ARTURO SOLIS COBOS, a/k/a
Arturo Solis Herrera, a/k/a Juan Jose
Darillos-Torres, a/k/a Arturo Solis Torres,
a/k/a Herrera Arturo Solis, a/k/a Arturo
Darillos Torres, a/k/a Jose Solis Cobos,
a/k/a Arturo Torres Solis, a/k/a Eddie Solis,
a/k/a Arturo Solis-Cobos, a/k/a Arturo
Solis Cobos, a/k/a Rene Solis-Torres, a/k/a
Arturo Soliz, a/k/a Solis Herrer, a/k/a Jose
Torres-Torres,

    Defendant - Appellant.

No. 23-5057
(D.C. No. 4:23-CR-00083-GKF-1)
(N.D. Okla.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **McHUGH**, **EID**, and **ROSSMAN**, Circuit Judges.

_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

Jose Arturo Solis Cobos was convicted of unlawful reentry under 8 U.S.C. § 1326 and sentenced to 18 months' imprisonment with three years of supervised release. Relying on the Presentence Investigation Report ("PSR"), the district court calculated Mr. Cobos's criminal history category as IV based on criminal convictions, including convictions in 2004 and 2009. The PSR factored those prior convictions into his criminal history because both were within ten years of Mr. Cobos's undisputed reentry into the United States in 2012.

On appeal, Mr. Cobos challenges the district court's calculation of his criminal history score. He contends the district court erred by not requiring the Government to prove by a preponderance of the evidence that Mr. Cobos was continuously present in the United States between his reentry in 2012 and his apprehension in 2023 before the court factored Mr. Cobos's 2004 and 2009 convictions into his criminal history score. Mr. Cobos relies on Ninth Circuit precedent to support his argument that the Government must prove his continuous presence in the United States.

We hold that the district court did not err when it calculated Mr. Cobos's criminal history category. We are not bound by the Ninth Circuit's test, and the Government met its burden under our precedent when it provided evidence that Mr. Cobos illegally reentered the country in 2012 and was apprehended in 2023. Further, even if we were to apply the Ninth Circuit standard, the Government proved by a preponderance of the evidence that Mr. Cobos was continuously present in the United States since his reentry in 2012. We therefore affirm the district court.

## I.    BACKGROUND

Mr. Cobos, a citizen of Honduras, was arrested for unlawful reentry in 2023. Prior to his arrest, Mr. Cobos illegally entered the United States at least six times and was removed from the country in 1996, 2003, 2004, 2005, 2008, and 2010. After Mr. Cobos was arrested in 2023, he admitted he had illegally reentered the country in 2012. Following his arrest, a federal grand jury charged Mr. Cobos with unlawful reentry under 8 U.S.C. § 1326, and Mr. Cobos pleaded guilty to that charge without a plea agreement.

In preparing the PSR, Probation calculated Mr. Cobos's criminal history score as 8, placing him in criminal history category IV and an offense level of 10, resulting in a United States Sentencing Commission Guidelines range of 15 to 21 months. This calculation was based on Mr. Cobos's prior criminal convictions in 2004, 2008, 2009, 2014, and 2015. Specifically, in 2004, Mr. Cobos was convicted of entry without inspection; in 2008, he was convicted of domestic assault and battery and interference with emergency telephone call; and, in 2009, he was convicted of reentry of deported alien. Mr. Cobos was also convicted of misdemeanor obstructing an officer and no valid driver's license in 2014 and of larceny of merchandise in 2015.

Mr. Cobos objected only to the PSR's inclusion of his 2004 and 2009 offenses. Probation assigned two criminal history points to each of those convictions. Without considering the 2004 and 2009 convictions, Mr. Cobos's criminal history score would have been 4, resulting in a criminal history category of III and a Guidelines range of 10 to

3

16 months.[1] *See* United States Sentencing Commission, *Guidelines Manual*, § 5A (Nov. 2021).

In response to Mr. Cobos's objection, Probation added an addendum to the PSR explaining that the two offenses were included in the calculation because both were within ten years of Mr. Cobos's illegal reentry in 2012. Mr. Cobos then moved for a downward departure in his criminal history category, discussing his ties to Oklahoma, including his employment, his late wife whom he married after his prior conviction in 2015, and his two children born after 2015. Mr. Cobos also filed a sentencing memorandum and a motion for a downward variance, making similar arguments.

At Mr. Cobos's hearing, the district court overruled Mr. Cobos's objection to the PSR. Mr. Cobos's counsel moved to reconsider, citing Ninth Circuit precedent requiring the Government to prove that the defendant has been continuously present in the United States since reentry. The Government responded that Mr. Cobos had admitted continuous presence by omission (i.e., by reporting that he had reentered the country in 2012 when asked) and alternatively, disputed Mr. Cobos's argument that, by leaving the United States after 2012 and reentering again, Mr. Cobos would have effectively ended the

---

[1] Mr. Cobos argues in his appellate brief that, without these two convictions, he would have had a criminal history score of 4, resulting in a criminal history category of II and a recommended sentence of 8 to 14 months. But a criminal history score of 4 corresponds to a criminal history category of III. *See* U.S.S.G. § 5A. Assuming a base offense level of 10, as reflected in the PSR, Mr. Cobos's recommended sentence would have instead been 10 to 16 months. *Id.* Unlike in his appellate brief, Mr. Cobos asserted correctly in his objection to the PSR that he would be in category III and have a recommended sentence of 10 to 16 months without the 2004 and 2009 convictions.

offense that commenced in 2012. The district court acknowledged the arguments made by both parties but ultimately denied Mr. Cobos's motion to reconsider and included his 2004 and 2009 convictions in calculating his criminal history score. The court sentenced Mr. Cobos to 18 months' imprisonment followed by three years of supervised release.

## II.     DISCUSSION

The parties dispute whether the district court should have considered Mr. Cobos's 2004 and 2009 convictions in calculating his criminal history. Mr. Cobos argues that, because the Government has not demonstrated he was continuously present in the United States between 2012 and his arrest in 2023, the Government did not prove the 2004 and 2009 convictions were within the ten-year look-back period in United States Sentencing Commission Guidelines Manual § 4A1.2(e)(2). Thus, he argues these two convictions should not have been included in his criminal history score, and his criminal history category and recommended Guidelines range should have been lower.

Whether there was sufficient support for the district court's factual findings is a question of fact reviewed for clear error. *United States v. Randall*, 472 F.3d 763, 765 (10th Cir. 2006). And whether the Government was required to prove Mr. Cobos's continuous presence in the United States between his reentry in 2012 and his 2023 arrest is a question of law we review de novo. *Id.* We conclude that the district court did not clearly err in finding that Mr. Cobos's offense commenced in 2012, and that we need not decide whether to adopt a "continuous presence" requirement because even under Ninth Circuit precedent, the Government met its burden. Thus, the district court properly

5

considered the 2004 and 2009 convictions in calculating Mr. Cobos's criminal history category as IV.

### A.     Legal Standard

Under 8 U.S.C. § 1326(a), "any alien who . . . has been . . . deported . . . and thereafter . . . enters, attempts to enter, or is at any time found in, the United States" shall be fined or imprisoned in accordance with that section. Thus, a "previously deported alien who illegally enters and remains in the United States can violate the statute at three different points in time, namely, when the alien (1) enters, (2) attempts to enter, or (3) is at any time found in the United States." *United States v. Ruiz-Gea*, 340 F.3d 1181, 1189 (10th Cir. 2003) (quotation marks omitted). "[T]he crime of being 'found' in the United States is a continuing offense, and in the case of a surreptitious entry, that crime is first committed when the defendant voluntarily reenters the country and continues to be committed until the defendant is 'found.'" *United States v. Villarreal-Ortiz*, 553 F.3d 1326, 1330 (10th Cir. 2009); *Ruiz-Gea*, 340 F.3d at 1189 ("In the case of a surreptitious reentry . . . , the 'found in' offense is first committed at the time of the reentry and continues to the time when the defendant is arrested for the offense." (quoting *United States v. Lopez-Flores*, 275 F.3d 661, 663 (7th Cir. 2001))).

For purposes of calculating a defendant's criminal history score, the Guidelines provide that "[a]ny other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted." U.S.S.G. § 4A1.2(e)(2). Thus, when a defendant has been charged with illegal reentry, the defendant's prior

sentences fall within this look-back period if they were imposed within ten years of the defendant's reentry into the United States.

We generally impose the burden of proof on the party seeking to increase or decrease the defendant's criminal history score. *United States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir. 1990) ("The government shall bear the burden of proof for sentence increases and the defendant shall bear the burden of proof for sentence decreases."); *see also United States v. Torres*, 182 F.3d 1156, 1162 (10th Cir. 1999) ("[I]t is generally 'the government which [has] the burden of showing whatever facts are needed to justify adding additional criminal history points.'" (second alteration in original) (quoting *United States v. Nicholas*, 133 F.3d 133, 136 (1st Cir. 1998))). This requires a showing by a preponderance of the evidence. *Kirk*, 894 F.2d at 1164 ("[T]he sentencing judge properly required Kirk to prove by a preponderance of evidence that he was entitled to a point reduction . . . ."); *United States v. Hill*, 53 F.3d 1151, 1153 (10th Cir. 1995) ("The government must prove a sentence enhancement by a preponderance of the evidence . . . .").

### B.      The Ninth Circuit's "Continuous Presence" Requirement

In the Ninth Circuit, if the government seeks to increase a defendant's sentence based on the defendant's criminal history, the government must prove by either a preponderance of the evidence or clear and convincing evidence that the defendant reentered the country and was continuously present in the country until the defendant was found. *United States v. Garcia-Jimenez*, 623 F.3d 936, 940–41 (9th Cir. 2010); *United States v. Valle*, 940 F.3d 473, 479 (9th Cir. 2019). A party can demonstrate "continuous

7

presence" by (1) accounting for a major portion of the time between the defendant's illegal reentry and the defendant's apprehension, and (2) providing evidence that the defendant had no reason to leave the United States. *Garcia-Jimenez*, 623 F.3d at 941.

The Ninth Circuit, like the Tenth Circuit, generally imposes the burden of proof on the party seeking an adjustment to the sentence. *See id.* at 940–41 ("[T]he government bore the burden of proving Garcia's continuous presence in the United States since April 20, 2007, by a preponderance of the evidence."). In the Ninth Circuit, when seeking to increase a defendant's sentence based on criminal history, the government's burden of proof turns on how disproportionate the increase sought is to the original offense level. *See Valle*, 940 F.3d at 479 ("As a general rule, a preponderance of the evidence standard applies, but the Government must meet a higher standard—proof by 'clear and convincing evidence'—in cases where there is 'an extremely disproportionate impact on the sentence.'" (quoting *United States v. Jordan*, 256 F.3d 922, 930 (9th Cir. 2001))). Courts in the Ninth Circuit have primarily focused on two factors in determining the proportional impact of the proposed criminal history score on the defendant's Guidelines range:

> [(1)] whether the increase in the number of offense levels is less than or equal to four; and [(2)] whether the length of the enhanced sentence more than doubles the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence.

*Id.* (quoting *Jordan*, 256 F.3d at 928). In *United States v. Garcia-Jimenez*, for example, the government was required to demonstrate by a preponderance of the evidence that the defendant was continuously present to justify the addition of three criminal history points

8

and a resulting increase in the defendant's criminal history category from III to IV. 623 F.3d at 940–41; *see Valle*, 940 F.3d at 482 n.10 (noting that the court in *Garcia-Jimenez* added three criminal history points based on the date of the offense's commencement, and that the increase in that case does not appear to have increased the defendant's offense level by more than four points or doubled the defendant's sentence length). In *United States v. Valle*, by contrast, the government was required to demonstrate by clear and convincing evidence that the defendant was continuously present in the country after his reentry because the government sought a sentence enhancement that was disproportionate to the original sentence, as it increased the defendant's offense level by eleven and more than doubled the recommended Guidelines range from 1 to 7 months to 37 to 46 months. 940 F.3d at 480.

### C.    *Analysis*

The district court did not commit a clear error when it found that Mr. Cobos had reentered the United States illegally in 2012 and thus included Mr. Cobos's 2004 and 2009 convictions in calculating his criminal history score. Although Mr. Cobos argues the district court erred because it did not hold the Government to the "continuous presence" standard required in the Ninth Circuit, we are not bound by out-of-circuit precedent. Even if we were to apply the Ninth Circuit's "continuous presence" requirement in this case, however, the district court would not have clearly erred in finding that Mr. Cobos was continuously present in the United States by a preponderance of the evidence.

1.    **Mr. Cobos's Reentry in 2012**

Mr. Cobos was convicted of illegal reentry under § 1326. In this circuit, this is an ongoing offense that "is first committed at the time of the reentry and continues to the time when the defendant is arrested for the offense." *Villarreal-Ortiz*, 553 F.3d at 1328 (footnote omitted) (quotation marks omitted). The Government bears the burden of proving by a preponderance of the evidence that the 2004 and 2009 convictions should be included in the criminal history calculation because these convictions had the effect of increasing Mr. Cobos's criminal history score and criminal history category, and thus increased Mr. Cobos's sentence. *See Kirk*, 894 F.2d at 1164. Neither party disputes that the Government has proven Mr. Cobos illegally reentered the country in 2012. Likewise, neither party disputes that the Government has proven Mr. Cobos was found in the country in 2023. In addition, the record contains ample evidence supporting a finding that Mr. Cobos's instant offense began in 2012, including an affidavit Mr. Cobos completed upon his apprehension in 2023 in which Mr. Cobos stated that he entered the United States in 2012. ROA Vol. I at 50 ("Q. Did you illegally enter the United States? When? Where? A. Yes 2012 Eagle Pass[.]"). The record further includes evidence of Mr. Cobos's arrests in 2014 and 2015 and evidence that after his 2015 arrest, Mr. Cobos married, had two children with his now-deceased wife, and worked to support his family in the United States. Based on the record, the district court did not err when it found that the instant offense commenced in 2012 and that Mr. Cobos's 2004 and 2009 convictions had therefore occurred within ten years of the offense.

**2.     Mr. Cobos's "Continuous Presence"**

Mr. Cobos argues that the district court erred because it did not require the Government to prove by a preponderance of the evidence that he was continuously present in the United States between his reentry in 2012 and his apprehension in 2023. But we are not bound by Ninth Circuit precedent.[2] Indeed, at least one of our sister circuits has rejected such a requirement as "passing odd" because it would allow a defendant to "take a brief [international] holiday . . . with no intention of staying [abroad] and thus avoid any repercussions" from the prior illegal time in the United States. *United States v. Fragozo-Soto*, 374 F. App'x 660, 663 (7th Cir. 2010) (unpublished) (citing *Lopez-Flores*, 275 F.3d at 663). We need not decide whether to adopt such a test here, however, because the Government provided sufficient evidence that Mr. Cobos has been continuously present in the United States since his illegal reentry in 2012.

Under the Ninth Circuit's standard, the Government would be required to prove Mr. Cobos's continuous presence by a preponderance of the evidence. Consideration of

---

[2] Although not binding precedent, our unpublished decisions do not reflect the existence of any "continuous presence" requirement in this circuit. For example, in an unpublished decision, *United States v. Huerta*, we held that the district court did not err in counting the defendant's 1989 and 1993 convictions because "[the defendant] admitted he illegally reentered the United States sometime in 1995, and therefore, the instant crime commenced in 1995." 503 F. App'x 589, 594 (10th Cir. 2012) (unpublished). Although the defendant in *Huerta* had been arrested in the United States in 2011, we did not discuss any requirement that the government prove the defendant had been "continuously present" in the country since 1995. *See id.*; *see also United States v. Munoz-Pena*, 530 F. App'x 846, 847 (10th Cir. 2013) (unpublished) (affirming the district court's addition of points based on convictions within ten years of the defendant's reentry into the United States without discussing any "continuous presence" showing).

the 2004 and 2009 convictions increased Mr. Cobos's criminal history score by only four points, which had the effect of increasing his criminal history category by one level, from III to IV. Mr. Cobos's recommended Guidelines range would have been 10 to 16 months without the 2004 and 2009 convictions, but was 15 to 21 months with those two convictions. The Ninth Circuit has indicated that changes of this magnitude do not render the increase disproportionate. *See Valle*, 940 F.3d at 479–80 (requiring a showing by clear and convincing evidence where the enhancement resulted in an eleven-level increase in the defendant's offense level and more than doubled his Guidelines range); *Garcia-Jimenez*, 623 F.3d at 940–41 (requiring a showing by a preponderance of the evidence where the enhancement increased the defendant's criminal history score by three points and brought the defendant from criminal history category III to category IV). Thus, even assuming application of the "continuous presence" requirement, the Government here would need to meet only the preponderance of the evidence standard.

Under a preponderance of the evidence standard, the record supports a finding that Mr. Cobos has been continuously present in the United States since his illegal reentry in 2012. As noted, the Ninth Circuit permits the Government to demonstrate "continuous presence" by (1) accounting for a major portion of the time between Mr. Cobos illegally reentering the country and his apprehension, and (2) demonstrating that Mr. Cobos had no reason to leave the country. *Garcia-Jimenez*, 623 F.3d at 941. The Government provided both categories of evidence here.

First, the Government's evidence accounting for significant portions of time between Mr. Cobos's reentry and apprehension supports a finding of "continuous

presence." The Government provided records of Mr. Cobos's arrests and subsequent convictions in 2014 and 2015. The Government also points to statements made by Mr. Cobos in his sentencing memorandum that, after his arrest in 2015, he married, had two children, and lived with and worked to support his family in the United States.

Second, the Government introduces evidence demonstrating that Mr. Cobos had no reason to leave the United States. As has been discussed, Mr. Cobos has had a family, including his late wife and two young children to whom he is now the sole living parent, in the United States. In addition, the record reflects that Mr. Cobos has previously been deported six times, in 1996, 2003, 2004, 2005, 2008, and 2010, and appears to have returned to the United States shortly after each deportation. This evidence further supports a finding that Mr. Cobos was continuously present in the United States. *See id.* (holding the government provided evidence that the defendant had no reason to leave the country because the defendant had lived in the United States since he was a child, his children and partner lived in the United States, and he returned to the United States after two prior deportations).

While Mr. Cobos contends the evidence does not show he was continuously present in the United States between his entry in 2012 and his convictions in 2014 and 2015, or between 2015 and his apprehension in 2023, even the Ninth Circuit does not require evidence that accounts for Mr. Cobos's presence in the United States at every moment since his reentry. *Id.* at 941–42; *see also United States v. Hernandez-Guerrero*, 633 F.3d 933, 938 (9th Cir. 2011) (holding the district court did not clearly err when "the PSR presented evidence establishing [the defendant's] continuous presence in the United

13

States in the form of employment history and dates of arrest in the United States, and established motivation to stay in the country to remain with his family" and "[n]othing in the record indicates [the defendant] was anywhere but in the United States during the relevant time period"). The Government's evidence accounting for Mr. Cobos's presence in the United States combined with evidence demonstrating that Mr. Cobos had no reason to leave the country would be sufficient to satisfy the Government's burden to show Mr. Cobos's "continuous presence" by a preponderance of the evidence. Accordingly, even if such a showing were necessary in this circuit, the Government has satisfied it.

### III.        CONCLUSION

The district court did not clearly err when it found that the instant offense began when Mr. Cobos reentered the United States in 2012 and continued until his arrest in 2023. Thus, the court did not err in calculating Mr. Cobos's criminal history category as IV. We therefore AFFIRM his sentence.[3]

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[3] Appellant's Motion for Expedited Consideration and Decision is denied as moot.