# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 07-3616

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Manuel Villareal-Amarillas, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

No. 07-3741

_____

Appeals from the United States
District Court for the
Western District of Missouri.

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Juan H. Gonzalez, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: December 10, 2008
Filed: April 9, 2009

_____

Before LOKEN, Chief Judge, BEAM and ARNOLD, Circuit Judges.

_____

LOKEN, Chief Judge.

Manuel Villareal-Amarillas and Juan Gonzalez pleaded guilty to conspiring to distribute more than 500 grams of methamphetamine. At sentencing, a police officer and three cooperating witnesses testified that the conspirators in fact distributed more than fifteen kilograms of methamphetamine, but the district court limited its drug quantity finding to the amount admitted in the guilty pleas -- more than 500 grams but less than 1.5 kilograms of methamphetamine. The government appealed the resulting sentences. We vacated the sentences and remanded for more specific drug quantity findings. United States v. Villareal-Amarillas, 454 F.3d 925, 930-32 (8th Cir. 2006), cert. denied, 549 U.S. 1137 (2007).

On remand, the district court[1] found both Villareal-Amarillas and Gonzalez responsible for more than fifteen kilograms of methamphetamine. This increased their offense levels to forty-one and thirty-seven, respectively, resulting in advisory guidelines sentencing ranges of 360 months to life in prison for Villareal-Amarillas and 235-293 months in prison for Gonzalez. The district court sentenced Villareal-Amarillas to 360 months and Gonzalez to 235 months in prison. They appeal these sentences, arguing (1) the district court violated due process when it refused to require proof of drug quantity facts by clear and convincing evidence; and (2) the court committed procedural plain error by not assessing individually the sentencing factors prescribed in 18 U.S.C. § 3553(a). We affirm.

## I. The Due Process Issue

Villareal-Amarillas and Gonzalez argue that the district court violated their right to due process by not requiring the government to prove drug quantity by clear and convincing evidence. Villareal-Amarillas's contention is plainly without merit.

---

[1]The HONORABLE FERNANDO J. GAITAN, JR., Chief Judge of the United States District Court for the Western District of Missouri.

He admitted in the plea agreement a base offense level of "at least 37" and a criminal history category of VI because he is a career offender under U.S.S.G. § 4B1.1. With no guidelines adjustment, the career offender admission subjected him to an advisory guidelines sentencing range of 360 months to life in prison. See U.S.S.G. Ch. 5, Pt. A, Sentencing Table. Thus, whether facts found at sentencing by a preponderance of the evidence produced upward and downward adjustments that resulted in the same advisory range raises no due process concerns whatsoever. On the other hand, the district court's drug quantity finding did increase Gonzalez's advisory sentencing range from 121-151 months to 235-293 months in prison. The issue is whether due process required the government to prove by clear and convincing evidence facts that produced so substantial an increase in his advisory guidelines range.

Under the prior mandatory Guidelines regime, we repeatedly held "that the facts relied upon by the district court at sentencing need be proved only by a preponderance of the evidence." United States v. Wise, 976 F.2d 393, 400 (8th Cir. 1992) (en banc); United States v. Gooden, 892 F.2d 725, 727-28 (8th Cir. 1989), cert. denied, 496 U.S. 908 (1990). However, for many years, we have recognized, but never applied, an exception to this general standard -- due process requires that sentencing determinations "that have an 'extremely disproportionate' effect on a defendant's sentence" be proved by clear and convincing evidence. United States v. Garth, 540 F.3d 766, 773 (8th Cir. 2008). As we will explain, this principle derives from a misreading of the Supreme Court's decision in McMillan v. Pennsylvania, 477 U.S. 79 (1986). We now join three other circuits in concluding that, even if valid when the Guidelines were mandatory, this principle did not survive the Supreme Court's recent decisions in United States v. Booker, 543 U.S. 220 (2005), and Gall v. United States, 128 S. Ct. 586 (2007).

1. The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." In re Winship, 397 U.S. 358, 364 (1970). However, once the defendant has been

convicted beyond a reasonable doubt, "[s]entencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all." McMillan, 477 U.S. at 91.

In McMillan, the Court held that due process did not require proof beyond a reasonable doubt of a fact Pennsylvania's mandatory minimum sentencing act labeled a sentencing factor -- visible possession of a firearm during the offense. It is the legislature's prerogative to define sentencing factors that are not elements of the offense, the Court explained, unless the statute is tailored so that a sentencing factor is "a tail which wags the dog of the substantive offense." Id. at 88. The Court then turned to petitioners' "subsidiary claim" -- that the sentencing factor must be proved by clear and convincing evidence, a standard that "is no stranger to the civil law." Addington v. Texas, 441 U.S. 418, 424 (1979) (quotation omitted). Distinguishing Addington, a civil commitment case, because sentencing occurs only after a criminal defendant has been convicted, the Court had "little difficulty" concluding that the preponderance standard satisfied due process. "[E]mbracing petitioners' suggestion that we apply the clear-and-convincing standard here would significantly alter criminal sentencing, for we see no way to distinguish the visible possession finding at issue here from a host of other express or implied findings sentencing judges typically make on the way to passing sentence." 477 U.S. at 92 n.8.

Four years later, the Third Circuit reviewed a federal sentence that included an upward departure of nearly thirty years from the mandatory guidelines range, based upon facts the district court found by a preponderance of the evidence. Defendant had not raised the principal issue in McMillan – whether the facts were elements of the crime that must be proved beyond a reasonable doubt. However, borrowing the "tail wags the dog" passage from that discussion in McMillan, the Third Circuit held that the clear and convincing evidence standard was "implicit in the statutory requirement" of findings that justify a guidelines departure. The court "reserve[d] judgment on the question whether it is also implicit in the due process clause itself." United States v.

Kikumura, 918 F.2d 1084, 1102 (3d Cir. 1990). The lengthy opinion made no mention of McMillan's summary rejection of the clear and convincing evidence standard of proof.

Not every circuit embraced Kikumura's distortion of the Supreme Court's analysis in McMillan.[2] But we did. Relying on the "tail wags the dog" passage in McMillan, as misapplied in Kikumura, we soon recognized "the possibility that in an exceptional case, such as this one, the clear and convincing standard adopted by our sister circuit might apply." United States v. Townley, 929 F.2d 365, 370 (8th Cir. 1991). In United States v. Galloway, 976 F.2d 414, 425-26 (8th Cir. 1992) (en banc), we subsequently held that relevant conduct, as defined in the Guidelines, may be proved at sentencing by a preponderance of the evidence. But we noted decisions in other circuits, including Kikumura, suggesting that due process may require a heightened standard of proof for "extremely disproportionate" sentencing factors. Accord Wise, 976 F.2d at 401. We concluded in Galloway that "[a]ny due process boundaries" were not breached by relevant conduct findings that increased the guidelines range from 21-27 months to 63-78 months. Id. at 426.

From these weak roots grew a due process exception to guidelines fact-finding by a preponderance of the evidence, an exception that rested on a "tail wags the dog" passage in McMillan addressing an entirely different issue. See, e.g., United States v. Coleman, 990 F.2d 419, 421 (8th Cir. 1993). We have never applied this exception, but even our post-Booker decisions have continued to suggest its validity, which understandably prompts defense counsel to continue to raise the issue on appeal, as in these cases. See, e.g., Garth, 540 F.3d at 773; United States v. Howe, 538 F.3d 842,

---

[2]The Supreme Court later noted but did not resolve "a divergence of opinion among the Circuits as to whether, in extreme circumstances, relevant conduct that would dramatically increase the sentence must be based on clear and convincing evidence." United States v. Watts, 519 U.S. 148, 156 (1997).

856 (8th Cir. 2008); United States v. Bradford, 499 F.3d 910, 919-20 (8th Cir. 2007), cert. denied, 128 S. Ct. 1446 (2008).  We conclude it is time to end the dance.[3]

2. In our view, Part III of the opinion in McMillan, 477 U.S. at 91-93, stands for the proposition that due process never requires applying the clear and convincing evidence standard to judicial fact-finding at criminal sentencing.  If a sentencing factor is an element of the offense, Part II of the opinion in McMillan and later cases such as Apprendi v. New Jersey, 530 U.S. 466 (2000), establish that the Fifth Amendment and the Sixth Amendment require that the relevant facts be proved to a jury beyond a reasonable doubt at trial.  But if the factor is not an element of the offense, the relevant facts may be proved by a preponderance of the evidence at sentencing.  In other words, Kikumura misread McMillan.  Accord United States v. Graham, 275 F.3d 490, 517 n.19 (6th Cir. 2001).

Our interpretation of McMillan is reinforced by the Supreme Court's more recent opinions on these sentencing issues.  Apprendi, 530 U.S. at 490, held that "any fact [other than a prior conviction] that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," even if it is deemed a sentencing factor under state law.  Applying the oft-quoted "tail wags the dog" passage from McMillan in its original context --

---

[3]In United States v. Archuleta, 412 F.3d 1003, 1007 (8th Cir. 2005), the panel observed without further analysis that "[n]othing in Booker changes the interpretation of McMillan in our post-Apprendi cases."  This statement was not necessary to the decision in Archuleta, so it is not binding authority.  Wilson v. Zoellner, 114 F.3d 713, 721 n.4 (8th Cir. 1997).  Nor did the Archuleta panel have the benefit of the later contrary decisions of other circuits and the Supreme Court's decision in Gall.  See United States v. Fisher, 502 F.3d 293, 305-08 (3d Cir. 2007), cert. denied, 128 S. Ct. 1689 (2008); United States v. Brika, 487 F.3d 450, 460-62 (6th Cir.), cert. denied, 128 S. Ct. 341 (2007); United States v. Reuter, 463 F.3d 792, 793 (7th Cir. 2006), cert. denied, 549 U.S. 1186 (2007).  But see United States v. Staten, 466 F.3d 708, 717-20 (9th Cir. 2006).

determining whether a so-called sentencing factor is an element of the offense that must be proved beyond a reasonable doubt -- the Court observed:

> When a judge's finding based on a mere preponderance of the evidence authorizes an increase in the maximum punishment, it is appropriately characterized as "a tail which wags the dog of the substantive offense."

Id. at 495, quoting McMillan. Apprendi's "bright-line rule" was reaffirmed in Blakely v. Washington, which expansively construed the term "statutory maximum" in Apprendi to mean "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*," regardless of the statutory maximum sentence. 542 U.S. 296, 303 (2004) (emphasis in original). Blakely set the stage for Booker, which applied Blakely's holding to facts that increased a federal sentence *because the Guidelines were mandatory*. 543 U.S. at 233-35. Like McMillan, these cases all treated the issue as being whether punishment-increasing facts must be proved beyond a reasonable doubt at trial, not whether they must be proved by clear and convincing evidence at sentencing.

3. As we have explained, the due process exception we have acknowledged but never applied was a flawed interpretation of McMillan even when the federal Guidelines were mandatory. Booker dramatically altered that landscape. Applying severance principles, the second majority opinion in Booker excised the statutory provisions that made the Guidelines mandatory, 18 U.S.C. §§ 3553(b)(1) and 3742(e). 543 U.S. at 245. By excising § 3553(b)(1), thereby making the Guidelines advisory, Booker granted sentencing judges far more discretion to impose sentences outside the applicable guidelines range, as the Court's more recent decisions have confirmed. See Spears v. United States, 129 S. Ct. 840, 842-45 (2009); Gall, 128 S. Ct. at 597; Kimbrough v. United States, 128 S. Ct. 558, 575-76 (2007). The question is whether these changes eliminate any due process concern requiring a heightened standard of proof for fact findings that have an "extremely disproportionate" impact on the

defendant's *advisory* guidelines sentencing range. Three circuits have answered that question affirmatively. We agree.[4]

In the present advisory Guidelines regime, facts found at sentencing merely inform the judge's discretion; they do not increase the maximum sentence to which a defendant is otherwise exposed. United States v. Grier, 475 F.3d 556, 564-65 (3d Cir.) (en banc), cert. denied, 128 S. Ct. 106 (2007). After Booker, "the only constraints on sentencing judges are the statutory maximum and minimum for the offense at issue and the sentencing statutes, particularly 18 U.S.C. § 3553(a)." Brika, 487 F.3d at 461. "The judge is cabined, but also liberated, by the [§ 3553(a)] factors. Unlike the guidelines, they bind, but they are broad enough and loose enough to allow the judge to dip below the guidelines range if he is justifiably reluctant to impose a sentence most of which rests entirely on a finding of fact supported by a mere preponderance of the evidence. . . ." Reuter, 463 F.3d at 793 (citations omitted).

The Guidelines declare "that use of a preponderance of the evidence standard is appropriate to meet due process requirements." U.S.S.G. § 6A1.3, comment. The Court in Booker surely had that declaration in mind when it explained, "everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the [statute] the provisions that make the Guidelines binding on district judges." 543 U.S. at 233. After Booker, a due process

---

[4]Our decision appears to conflict with the Ninth Circuit decision in Staten, which held that Booker did not overrule prior Ninth Circuit decisions requiring a heightened standard of proof of certain sentencing factors. 466 F.3d at 718-20. The conflict may be more apparent than real. In the Ninth Circuit, a three-judge panel may reexamine a prior panel decision only if a supervening Supreme Court decision is "clearly irreconcilable." By contrast, we may reconsider a prior panel's decision if a supervening Supreme Court decision "undermines or casts doubt on the earlier panel decision." K.C. 1986 Ltd. Partnership v. Reade Mfg., 472 F.3d 1009, 1022 (8th Cir. 2007). We agree with the Third and Seventh Circuits that Booker was such a supervening decision.

challenge to findings of fact that impact the defendant's advisory guidelines sentencing range "is cognizable more properly as a challenge to the reasonableness of his sentence." Brika, 487 F.3d at 462, citing United States v. Bah, 439 F.3d 423, 432-33 (8th Cir. 2006) (Bye, J., concurring). As the Third Circuit explained in overruling Kikumura, "concerns about the 'tail wagging the dog' . . . were put to rest when Booker rendered the Guidelines advisory." Fisher, 502 F.3d at 305.

## II. The Statutory Sentencing Factors

Villareal-Amarillas and Gonzalez argue for the first time on appeal that the district court committed procedural error under Gall, 128 S. Ct. at 597, when it failed to "state an individualized assessment of the sentencing factors contained in 18 U.S.C. § 3553(a)." This contention is plainly without merit. We do not require a mechanical recitation of the § 3553(a) factors when, as here, it is clear the district court properly considered those factors. See United States v. Battiest, 553 F.3d 1132, 1136 (8th Cir. 2009); United States v. Walking Eagle, 553 F.3d 654, 659 (8th Cir. 2009); United States v. Perkins, 526 F.3d 1107, 1110-11 (8th Cir. 2008). The district court explained that it imposed sentences within each defendant's guidelines range to punish the defendant, to deter others from committing similar offenses, and to protect the public from future harm, an explanation demonstrating consideration of the statutory sentencing factors. See 18 U.S.C. § 3553(a)(2)(A)-(C). Neither defendant requested a downward departure or variance. As the Supreme Court explained in Rita v. United States, 127 S. Ct. 2456, 2468 (2007):

> [W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation. Circumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case, and that the judge has found that the case before him is typical. Unless a party contests the Guidelines sentence

generally under § 3553(a) . . . or argues for departure, the judge normally need say no more.

The judgments of the district court are affirmed.

_____