**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee*,

v.

MIGUEL SEBASTIAN VALLE, AKA
Miguel Sebastian Balle, AKA
Miguel Valle Cruz, AKA Miguel
Valle Sebastian,
      *Defendant-Appellant.*

No. 18-50199

D.C. No.
8:18-cr-00043-
JVS-1

OPINION

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted July 10, 2019
Pasadena, California

Filed October 9, 2019

Before: Milan D. Smith, Jr. and Michelle T. Friedland,
Circuit Judges, and Stanley A. Bastian,[*] District Judge.

Opinion by Judge Friedland

---

[*] The Honorable Stanley A. Bastian, United States District Judge for
the Eastern District of Washington, sitting by designation.

## SUMMARY**

### Criminal Law

The panel vacated a sentence for illegal reentry into the United States after deportation in violation of 8 U.S.C. § 1326, and remanded for resentencing.

The panel held that—as the Government conceded—the district court erred in concluding that, in calculating the Sentencing Guidelines range, proof of continuous presence in the United States was not required.

The panel held that the district court's alternative holding that, as a factual matter, the defendant was continuously present in the United States from 2004 to 2017 was also erroneous. The panel held that because enhancements depending on that continuous-presence finding raised the defendant's offense level by significantly more than 4 and far more than doubled his sentencing range, the Government was required to establish the defendant's continuous presence by clear and convincing evidence. The panel held that the Government cannot establish by clear and convincing evidence a non-citizen's continuous presence in the United States since the alleged time of reentry without submitting any direct evidence of where the non-citizen was for more than a decade. The panel gave some weight to the inference that a non-citizen who had previously returned after being removed and who had family in the United States would have made efforts to stay in the country. The panel

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

concluded, however, that this inference is not enough to carry the Government's burden to prove the thirteen years of continuous presence in the United States necessary to support application of the enhancements to the defendant.

The panel remanded for resentencing based on a Guidelines range of 1 to 7 months. Because the Government failed to carry its burden despite an extensive factual inquiry at the original sentencing, the panel held that on remand the Government may not submit new evidence of the defendant's whereabouts. Because the defendant has already been in custody for about 20 months, the panel ordered the mandate to be issued forthwith.

## COUNSEL

Brianna Fuller Mircheff (argued), Deputy Federal Public Defender; Hilary Potashner, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellant.

Lawrence E. Kole (argued), Assistant United States Attorney; Dennise D. Willett, Assistant United States Attorney, Chief, Santa Ana Branch Office; Nicola T. Hanna, United States Attorney; United States Attorney's Office, Santa Ana, California; for Plaintiff-Appellee.

**OPINION**

FRIEDLAND, Circuit Judge:

This appeal requires us to evaluate the Government's burden of proof in demonstrating the applicability of sentencing enhancements for an illegal reentry crime. Specifically, we consider whether the Government can establish by clear and convincing evidence a non-citizen's continuous presence in the United States since the alleged time of reentry without submitting any direct evidence of where the non-citizen was for more than a decade. We hold that it cannot. We give some weight to the inference that a non-citizen who had previously returned after being removed and who had family in the United States would have made efforts to stay in the country. But that inference is not enough to carry the Government's burden here to prove the thirteen years of continuous presence in the United States necessary to support the enhancements applied to Petitioner Miguel Valle's sentence. We therefore vacate and remand to the district court for resentencing.

**I.**

In 1998 and 2000, Miguel Valle was convicted of felony drug offenses in California state court.[1] Following prison

---

[1] We note that there are some discrepancies in the record and briefing about the exact dates of Valle's state drug convictions. We need not precisely determine which dates are correct, however, because all possible dates are long enough ago that any differences are immaterial to whether the sentencing enhancements at issue apply. Accordingly, in this opinion we rely on the dates of conviction recorded by the Department of Justice in records pertaining to Valle's removals: July 8, 1998, and January 5, 2000.

terms for these convictions, Valle was removed from the United States in 1998 and 2002, respectively.

On June 17, 2004, Valle was arrested in Santa Ana, California, for driving under the influence, but was not subsequently convicted or removed from the country. More than a decade later, on September 25, 2017, Valle was again arrested by the Santa Ana police, who notified federal immigration authorities of his presence. In June 2018, Valle pleaded guilty to a charge of illegal reentry into the United States after deportation, in violation of 8 U.S.C. § 1326.

Valle's Pre-Sentence Report ("PSR") calculated his sentencing range under the United States Sentencing Guidelines Manual ("Guidelines" or "U.S.S.G.") starting from a base offense level of 8 and criminal history score of 2. Valle was eligible for additional sentencing enhancements if his 1998 and 2000 state drug convictions occurred within ten and fifteen years, respectively, of the start of his illegal reentry offense, so identifying the appropriate Guidelines range required determining when Valle's illegal reentry "commenced." *See United States v. Salazar-Robles*, 207 F.3d 648, 649–50 (9th Cir. 2000) (explaining that a § 1326 offense has only two elements: "illegal return and being found" in the United States).

The PSR reasoned that Valle's illegal reentry had commenced by June 17, 2004, when he was arrested in Santa Ana. The PSR did not, however, describe any contact with law enforcement—despite the existence of an outstanding bench warrant related to his 2004 arrest—or any other information about Valle's whereabouts between June 2004 and September 2017, when he was arrested for the instant reentry offense. Using 2004 as the starting point for his illegal reentry crime, the PSR added 12 levels to his base offense level for his prior drug convictions according to

U.S.S.G. § 2L1.2 and 5 points to his criminal history score under U.S.S.G. § 4A1.1.**[2]** Factoring in a 3 level downward adjustment for acceptance of responsibility, the PSR arrived at an offense level of 17, a criminal history score of 7, and a corresponding criminal history category of IV. The resulting recommended sentencing range was 37 to 46 months.

Valle objected to treating June 17, 2004 as the date the offense began because there was no evidence in the PSR about whether or how many times he left the United States between that date and the date of his 2017 arrest. Instead, he suggested that the offense actually began on September 25, 2017, the date he was "found in" the United States within the meaning of 8 U.S.C. § 1326(a)(2). He contended that his 1998 and 2000 convictions were outside their respective ten- and fifteen-year windows from 2017 and therefore could not be counted in calculating either his offense level or criminal history category.**[3]** Without enhancements based on those

---

**[2]** Section 4A1.1(a) requires adding 3 criminal history points for any prior sentence of more than thirteen months, but the prior conviction is only counted if it resulted in the defendant's being incarcerated during the fifteen years prior to the "commencement of the instant offense." U.S.S.G. § 4A1.1(a) & cmt. n.1. Section 4A1.1(b) requires adding 2 points for any prior sentence between 60 days and 13 months, but excludes any sentence imposed more than ten years prior to the defendant's commencement of the instant offense. U.S.S.G. § 4A1.1(b) & cmt. n.2. The guideline governing unlawful reentry, U.S.S.G. § 2L1.2, provides enhancements to the base offense level for certain prior convictions, but the Application Notes explain that only "convictions that receive criminal history points under § 4A1.1(a), (b), or (c)" should be used. U.S.S.G. § 2L1.2(b) & cmt. n.3. This means that the enhancements only apply to convictions that fall within the time ranges that count for criminal history points.

**[3]** Valle's 1998 and 2000 convictions would undoubtedly have counted if he had separately been prosecuted for illegal reentry when he

convictions, Valle's proper offense level with a downward adjustment for acceptance of responsibility would have been 6,[4] with a criminal history category of II, leading to a corresponding Guidelines range of 1 to 7 months.

At his sentencing hearing, Valle reiterated his objections, arguing that the Government needed to prove that he was continuously present in the United States from 2004 to 2017 through clear and convincing evidence, and that it had failed to do so. The Government, by contrast, agreed with the calculations in the PSR, asserting that there was "ample evidence" under the clear and convincing evidence standard for the district court to find that Valle had commenced the illegal reentry offense in 2004 and remained in the country thereafter. The Government contended that "the only reasonable inference" from the record was that Valle had remained in the United States from 2004 to 2017. It argued that he "ha[d] consistently resided in Santa Ana" since he first entered the country in the 1990s and that he had a pattern of returning to the United States (and, specifically, to Santa Ana) after each of his prior removals. In support, the Government presented evidence that Valle listed Santa Ana

---

was arrested in 2004, but the five-year statute of limitations for that hypothetical "found in" date had long since expired by the time he was found in 2017. *See* 18 U.S.C. § 3282(a); *United States v. Zamudio*, 787 F.3d 961, 967 (9th Cir. 2015) (explaining that the statute of limitations for an illegal reentry crime begins to run when the defendant is "found in" the United States).

[4] Without the extra levels for his prior convictions, Valle would not have been eligible for the additional 1 level reduction for acceptance of responsibility that he received under U.S.S.G. § 3E1.1(b), which is available only to a defendant with an offense level of 16 or greater. In that instance, his adjusted offense level would have been 11 levels lower than the PSR's recommendation, rather than 12.

addresses in 1998, 1999, 2000, and 2004 on forms related to his prior removals and arrests.[5]

The Government further argued that Valle had strong family ties to the United States, including a spouse, a brother and nieces in California, and three American citizen children. The Government also pointed out that there was no evidence that Valle had actually left the United States since 2004. It was, the Government maintained, "speculative and counter-intuitive to suppose that, without being discovered by immigration officials, [Valle] would voluntarily choose to surrender his long-time residence in Santa Ana" and abandon his desires to live in the United States and to be near his family, especially in light of how difficult it could be to return undetected.

The district court agreed that the Guidelines range recommended by the PSR (and by the Government) was appropriate. The court first decided as a legal matter that the Government was not required to prove that Valle was continuously in the United States from 2004 to the date of his arrest in 2017. The court then stated that, if its reading of the law were incorrect, "[it] would find as a factual matter, and beyond a reasonable doubt, that Valle remained in the United States until he was arrested." The court reasoned:

> As the Government demonstrates, there is a clear pattern of return to the United States after each removal from 1998 to 2004. There is a strong inference that [Valle] wished to remain in the United States, and no evidence that he ever returned to Mexico after 2004.

---

[5] The forms showed that he had listed Santa Ana as his city of residence but with at least two different ZIP codes.

> He maintained the same address, and had a family here. These facts support the inference that he did indeed remain in the United States.

The court thus imposed a 37-month sentence, to be followed by one year of supervised release.

## II.

When a defendant objects to a district court's Guidelines calculation at the time of sentencing, we review the district court's legal interpretation of the applicable guideline de novo and its factual findings for clear error. *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc). A finding of fact is clearly erroneous if it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) (quotation marks omitted).

## III.

## A.

On appeal, the Government does not defend the district court's legal conclusion that proof of continuous presence was not required. That conclusion was indeed erroneous. *See, e.g.*, *United States v. Garcia-Jimenez*, 623 F.3d 936, 940–41 (9th Cir. 2010) ("In the district court, the government bore the burden of proving [the defendant's] continuous presence in the United States."); *id.* at 941 (reviewing the district court's determination that the defendant had never "physically left the United States to return to Mexico"). We accordingly focus our analysis solely on the district court's alternative holding that, as a factual

matter, Valle was continuously present in the United States from 2004 to 2017.

**B.**

The burden of proof for a factual finding underlying a sentencing enhancement depends on the magnitude of the finding's effect on the sentencing range. As a general rule, a preponderance of the evidence standard applies, but the Government must meet a higher standard—proof by "clear and convincing evidence"—in cases where there is "an extremely disproportionate impact on the sentence." *United States v. Jordan*, 256 F.3d 922, 930 (9th Cir. 2001).

We look to the totality of the circumstances to see if that heightened standard applies. *United States v. Pike*, 473 F.3d 1053, 1057 (9th Cir. 2007) (citing *Jordan*, 256 F.3d at 928). In *United States v. Valensia*, we surveyed past cases and extracted several factors that may guide this inquiry. 222 F.3d 1173, 1182 (9th Cir. 2000), *vacated and remanded on other grounds*, 532 U.S. 901 (2001). We summarized these factors in *Jordan*:

> (1) whether the enhanced sentence falls within the maximum sentence for the crime alleged in the indictment; (2) whether the enhanced sentence negates the presumption of innocence or the prosecution's burden of proof for the crime alleged in the indictment; (3) whether the facts offered in support of the enhancement create new offenses requiring separate punishment; (4) whether the increase in sentence is based on the extent of a conspiracy; (5) whether the increase in the number of offense levels is less than or equal to four; and (6) whether the length of the

enhanced sentence more than doubles the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence.

*Jordan*, 256 F.3d at 928 (quotation marks omitted). Both *Jordan* and *Valensia* disregarded the first four factors, however, and focused entirely on how enhancements increased both the offense level and the length of the recommended Guidelines range. *Id.* at 929; *Valensia*, 222 F.3d at 1182. More recent cases have also relied on only these last two factors. *See, e.g.*, *United States v. Gonzalez*, 492 F.3d 1031, 1039–40 (9th Cir. 2007) (explaining that "[a]lthough the first four factors are either not particularly relevant or do not weigh in favor of a heightened standard, the last two factors are significant" and that "[w]e have previously invoked the clear and convincing evidence standard where only the two final factors favor its application").[6]

In *United States v. Hopper*, 177 F.3d 824 (9th Cir. 1999), the first case to apply the clear and convincing standard in

---

[6] As we have previously observed, "we have not been a model of clarity in deciding what analytical framework to employ when determining whether a disproportionate effect on sentencing may require the application of a heightened standard of proof." *United States v. Berger*, 587 F.3d 1038, 1048 (9th Cir. 2009). Indeed, it is not entirely clear how the first three *Valensia* factors were derived from our decision in *United States v. Restrepo*, 946 F.2d 654 (9th Cir. 1991) (en banc), which *Valensia* cited as their source, *Valensia*, 222 F.3d at 1182. We need not grapple with this question here, however, because our caselaw makes clear that we must apply the heightened clear and convincing standard based solely on the large impact on Valle's Guidelines calculations as reflected in the fifth and sixth factors.

this sentencing enhancement context, we held that a 7 level adjustment to a defendant's offense level, which increased his sentencing range from 24 to 30 months to 63 to 78 months, satisfied the "extremely disproportionate impact test" and required clear and convincing evidence of the adjustment's predicate facts. *Id.* at 833. Later, in *Jordan*, we held that the higher standard applied because the contested enhancements increased the offense level by 9 and more than doubled the sentencing range, raising it from 70 to 87 months to 151 to 188 months. 256 F.3d at 929.

Here, counting Valle's prior convictions led to an 11 level increase in his offense level and a recommended Guidelines range of 37 to 46 months rather than 1 to 7 months. Because the application of these enhancements raised Valle's offense level by significantly more than 4 and far more than doubled his sentencing range, *see id.* at 928, the Government was required to establish Valle's continuous presence by clear and convincing evidence, *see id.*

The Government contends on appeal that the lower preponderance standard applies.[7] We are not persuaded that any of the cases the Government cites supports this contention. In *United States v. Harrison-Philpot*, 978 F.2d

---

[7] Arguably, the Government forfeited the argument that the lower standard applied because it conceded the higher standard in the district court. *See Tibble v. Edison Int'l*, 843 F.3d 1187, 1193 (9th Cir. 2016) (en banc) ("Generally, we do not 'entertain[] arguments on appeal that were not presented or developed before the district court.'" (alteration in original) (quoting *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 869 (9th Cir. 2013))). But Valle does not make a forfeiture argument in his reply brief, and in any event we have discretion to overlook forfeiture in exceptional cases including "when the issue presented is purely one of law." *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1322 (9th Cir. 2012) (quoting *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985)).

1520 (9th Cir. 1992), for example, we applied the preponderance standard but explained that we had previously "left open the possibility that if a [future] case involved a severe penalty enhancement, due process might require heightened procedural protections." *Id.* at 1523–24. This eventually came to pass in *Hopper*, when we first applied the clear and convincing evidence standard. 177 F.3d at 833. Later, in *United States v. Riley*, 335 F.3d 919 (9th Cir. 2003), we emphasized that when "the combined impact of contested sentencing enhancements is disproportionate relative to the offense of conviction, the district court must apply the clear and convincing evidence standard of proof." *Id.* at 925 (citing *Jordan*, 256 F.3d at 927–29). We upheld the application of the lower preponderance standard in *Riley* only because we concluded that the impact of the enhancements we considered to be at issue—which would not have more than doubled the defendant's sentencing range—was not significant enough to apply the heightened standard. *Id.* at 927.[8]

---

[8] The Government argues that, under *Harrison-Philpot* and *Riley*, a fact "relat[ing] to the scope of the charged crime"—here, the length of time that Valle was continuously present—"should not be subject to a heightened standard of proof." But we have applied these cases where a defendant has been convicted for conspiracy or as a participant in a fraudulent scheme and the extent of the conspiracy or fraudulent scheme is the basis of the enhanced sentence. *See, e.g.*, *United States v. Hymas*, 780 F.3d 1285, 1290–93 (9th Cir. 2015) (affirming the use of the preponderance standard to determine the direct losses stemming from a wire fraud conviction involving a fraudulent loan, but requiring the use of the clear and convincing evidence standard for proof of losses that did not stem from "the loan that was the subject of the conviction"); *United States v. Treadwell*, 593 F.3d 990, 1001 (9th Cir. 2010) (citing *Riley* for the proposition that "sentencing determinations relating to the extent of a criminal conspiracy need not be established by clear and convincing evidence"); *Berger*, 587 F.3d at 1048–49 (affirming the use of the

## C.

Applying the clear and convincing standard, we conclude that the Government failed to meet its burden of proving Valle's continuous presence. The district court's factual finding that Valle was in the United States continuously from his 2004 arrest until his 2017 arrest is unsupported by any direct evidence in the record.[9]  *See Jordan*, 256 F.3d at 930 (explaining that "the clear and convincing evidence standard . . . requires that the government 'prove [its] case to a higher probability than is required by'" the preponderance standard (quoting *California ex rel. Cooper v. Mitchell Bros.' Santa Ana Theater*, 454 U.S. 90, 93 n.6 (1981))).

Both parties argue that *United States v. Garcia-Jimenez* governs here.  In *Garcia-Jimenez*, the district court had to

preponderance standard to determine the extent of a fraud conspiracy); *United States v. Armstead*, 552 F.3d 769, 777–78 (9th Cir. 2008) (citing *Riley* and *Harrison-Philpot* for the proposition that "[e]nhancements based on the extent of a conspiracy are 'on a fundamentally different plane than' enhancements based on uncharged or acquitted conduct" (quoting *Riley*, 335 F.3d at 926)); *United States v. Garro*, 517 F.3d 1163, 1168–69 (9th Cir. 2008) (affirming the use of the preponderance standard to determine the extent of a wire fraud scheme). *Harrison-Philpot*'s and *Riley*'s association with conspiracy is epitomized by the fourth *Valensia* factor, which, citing *Harrison-Philpot*, asks whether "the increase in sentence [is] based on the extent of a conspiracy." *Valensia*, 222 F.3d at 1182. Here, Valle has not been charged with a conspiracy or as a participant in a fraudulent scheme, so these cases—and the fourth *Valensia* factor more generally—are inapposite.

[9] We would reach this conclusion regardless of whether Valle maintained the same street address in Santa Ana from 1998 to 2004. We therefore need not reach Valle's argument that he is separately entitled to relief because the district court misinterpreted the exhibits as showing that he had lived at "the same address."

determine whether the defendant commenced his crime of illegal reentry in April 2007 or April 2009. 623 F.3d at 940–41. That inquiry "rested entirely on the factual question of whether [the defendant] ever physically left the United States to return to Mexico" between those times. *Id.* at 941. The government "submitted evidence accounting for [the defendant's] presence in the United States for a large portion of" the two-year period in which it had to prove he was continuously present, and argued that the court could infer Garcia-Jimenez had not left during the gaps. *Id.* Specifically, the government's evidence included records showing that Garcia-Jimenez had been in the custody of the California Department of Corrections from April to early August 2007 and then again for an indeterminate period of time starting in mid-August 2007; that "soon" after his release from custody, he worked for a community service program from November 2007 until mid-January 2008; that he had been arrested again and held in custody for nine days in mid-June 2008; and that he had worked for the community service program for a second term from the end of June 2008 until the end of September 2008. *Id.* The government also explained why Garcia-Jimenez had no reason to leave the United States: He had lived here since he was five years old, had children who were citizens and a fiancée who lived in the United States, and had returned to the country after each of two prior deportations. *Id.* Finally, the government argued that it was "illogical to assume" Garcia-Jimenez would voluntarily leave the country while living here illegally "because traveling to Mexico and returning would have subjected [him] to the risk of being detected." *Id.*

The district court in *Garcia-Jimenez* applied a preponderance of the evidence standard and found that Garcia-Jimenez had not left the United States during the relevant period. *Id.* at 939. It suggested, however, that if the

government had faced a higher burden of proof, it might have ruled for Garcia-Jimenez.[10] *Id.* at 939–40.

On appeal, we held that the district court had not clearly erred. *Id.* at 941. We explained that although the government did not account for Garcia-Jimenez's presence at every moment between April 2007 and April 2009, the government had nevertheless demonstrated continuous presence by a preponderance of the evidence. *Id.* at 941–42. We reasoned that the government had carried its burden because it had accounted for Garcia-Jimenez's whereabouts "for a major portion of the time," and although it was "conceivable that [he] could have returned to Mexico at some point" during the unaccounted-for gaps, the government had also established that Garcia-Jimenez had no reason to leave the United States, and had shown that leaving "would have been illogical." *Id.* We gave some additional weight to the fact that Garcia-Jimenez "offered no evidence at all to counter the government's evidence other than general findings regarding Mexican aliens frequently crossing the border." *Id.* at 942.

The differences between the factual record here and that in *Garcia-Jimenez* cause us to conclude that *Garcia-Jimenez* supports Valle's position far more than it supports the Government's. First and foremost, there is a substantial difference in the amount of unaccounted-for time. In

---

[10] In *Garcia-Jimenez*, the district court added 3 criminal history points under U.S.S.G. § 4A1.1 based on the date of offense, increasing his criminal history category from III to IV. 623 F.3d at 939–40. Our opinion on appeal does not indicate what Garcia-Jimenez's sentence would have been if he had been in the lower criminal history category. But there is no indication that the added criminal history points resulted in a greater than 4 level increase to his offense level or more than doubled his sentencing range. *Jordan*, 256 F.3d at 928.

*Garcia-Jimenez*, the government's evidence definitively proved Garcia-Jimenez's presence in the United States for nearly half of the necessary two years, and left holes of no more than 5 to 6 months. By contrast, here the Government presented no direct evidence of Valle's whereabouts for *any* of the thirteen *years* in question. Second, the inference that Valle had no reason to leave the United States is weaker than it was in *Garcia-Jimenez* because Valle came to the United States in his thirties, rather than as a young child. Valle therefore plausibly had much stronger ties to Mexico and presumably more reasons to return for at least some period of time. Moreover, in *Garcia-Jimenez* the government only had to demonstrate continuous presence by a preponderance of the evidence, in contrast to the heightened standard that applies here. Indeed, as we pointed out, the district court in *Garcia-Jimenez* had noted that "by a standard other than the preponderance of the evidence . . . defense counsel would have a much stronger argument." *Id.* at 939.

The Government also points to *United States v. Romero-Rendon*, 220 F.3d 1159 (9th Cir. 2000), in which we held that the PSR alone provided sufficient evidence of a prior conviction to support a sentencing enhancement.[11] *Id.* at 1163. The Government argues that, here, we can similarly accept the PSR's conclusion that Valle was continuously present as clear and convincing evidence that he did not leave the country between 2004 and 2017. But in *Romero-Rendon*, the PSR was uncontroverted. *Id.* at 1163, 1165. By contrast, Valle specifically objected to the continuous presence findings contained in his PSR, so we have no basis to conclude that the Government met its burden based on the

---

[11] In *Romero-Rendon*, we declined to decide the correct standard of proof because we concluded that the uncontroverted PSR was sufficient to satisfy the clear and convincing standard. 220 F.3d at 1163.

factual statements in the PSR alone. Furthermore, the factual issue that the PSR in *Romero-Rendon* proved (the nature of the defendant's prior conviction) was much more straightforward than the one here, which requires a significant inferential leap.

Nor are we persuaded by the Government's contention that it carried its burden simply because Valle did not present any actual evidence that he left the United States during the thirteen-year period in question. It is true that in *United States v. Hernandez-Guerrero*, 633 F.3d 933 (9th Cir. 2011), we held that the absence of any evidence in the record indicating that the defendant "was anywhere but in the United States during the relevant time period" supported a continuous presence finding. *Id.* at 938. But in *Hernandez-Guerrero*, we applied the lower preponderance standard. *Id.* The other cases cited by the Government are similarly unavailing because they too applied that less stringent standard of proof. *See, e.g.*, *United States v. Charlesworth*, 217 F.3d 1155, 1160–61 (9th Cir. 2000); *United States v. Marin-Cuevas*, 147 F.3d 889, 895 (9th Cir. 1998). Here, the absence of evidence in the record that Valle was anywhere else during the relevant time period does not support a conclusion that the Government has met its burden by clear and convincing evidence. It is the Government's burden to prove continuous presence, not Valle's burden to prove lack thereof. *See Charlesworth*, 217 F.3d at 1158.

Ultimately, because it was the Government's significant burden to prove that Valle was continuously present, and it produced no evidence whatsoever about where he was for over a decade, the district court clearly erred in concluding that the Government had sufficiently proven that he remained in the United States.

**D.**

Because the district court erred in accepting the 2004 date, it started from the wrong Guidelines range in reaching its sentence. We therefore must vacate Valle's sentence and remand for resentencing. *Kimbrough v. United States*, 552 U.S. 85, 108 (2007) (noting that "district courts must treat the Guidelines as the 'starting point and the initial benchmark'" (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007))); *United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011) (holding that a "mistake in calculating the recommended Guidelines sentencing range is a significant procedural error that requires us to remand for resentencing").

Although when remanding for resentencing we usually do not limit the evidence the district court may consider, "[w]e may depart from this general rule . . . when 'there was a failure of proof after a full inquiry into the factual question at issue.'" *United States v. Espinoza-Morales*, 621 F.3d 1141, 1152 (9th Cir. 2010) (quoting *United States v. Matthews*, 278 F.3d 880, 886 (9th Cir. 2002) (en banc)). Here, because the Government failed to carry its burden despite an extensive factual inquiry below, it is not entitled to "a second bite at the apple." *Id.* We therefore hold that on remand it may not submit new evidence of Valle's whereabouts.

**IV.**

For the foregoing reasons, we vacate Valle's sentence and remand for resentencing based on the Guidelines range of 1 to 7 months. Because Valle has already been in custody for the illegal reentry offense for about 20 months, we order the mandate to be issued forthwith and to be transmitted

without delay to the district court for immediate resentencing.

**VACATED and REMANDED.   MANDATE TO ISSUE FORTHWITH.**