**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   19-50272 |
| Plaintiff-Appellee, | D.C. No. 2:13-cr-00469-CJC-2 |
| v. | |
| KELEN MAGAEL BUCHAN, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted August 31, 2021
Pasadena, California

Before:  IKUTA, BENNETT, and R. NELSON, Circuit Judges.
Concurrence by Judge R. NELSON

Kelen Magael Buchan appeals his conviction and sentence following a

guilty plea to one count of wire fraud in violation of 18 U.S.C. § 1343.  We have

jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and affirm.

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Even if the district court erred when it applied the preponderance standard instead of the clear and convincing standard at sentencing to the two disputed enhancements, *see United States v. Jordan*, 256 F.3d 922, 928–29 (9th Cir. 2001), any error was harmless because the district court held that it would have reached the same conclusion had it applied the clear and convincing standard, and this conclusion is not clearly erroneous. *Cf. United States v. Hymas*, 780 F.3d 1285, 1292 (9th Cir. 2015). Given the evidence in the record that scheme-related materials were located in Buchan's bedroom dating back to the beginning of the scheme in December 2011, including a managerial cell phone that contained outgoing messages with the same pattern of speech as Buchan's prison communications, the district court did not clearly err in concluding that the loss from the entire scheme was attributable to Buchan as "(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B); *see also United States v. Blitz*, 151 F.3d 1002, 1012 (9th Cir. 1998). Therefore, the district court did not err in applying a 12-level upward adjustment for the loss. U.S.S.G. § 2B1.1(b)(1)(G).

Likewise, given evidence in the record that Buchan had control over at least one person in the scheme through Buchan's use of the managerial cell phone, the

2

district court did not clearly err in finding that a 3-level adjustment under U.S.S.G. § 3B1.1(b) applied. *See United States v. Camper*, 66 F.3d 229, 231 (9th Cir. 1995); *United States v. Gadson*, 763 F.3d 1189, 1222 (9th Cir. 2014).

The district court did not abuse its discretion in imposing Buchan's below-Guidelines sentence of 51 months, and such a sentence was not substantively unreasonable, because the district court adequately weighed the 18 U.S.C. § 3553(a) factors, took into account the "unique evils" of the scam to which Buchan pleaded guilty, and took into account Buchan's mitigating factors. *See United States v. Scrivener*, 189 F.3d 944, 951–52 (9th Cir. 1999). Buchan's co-defendants who received lighter sentences were not similarly situated as managers.

Buchan waived his objection regarding the restitution order because he failed to raise that objection to the district court. *See United States v. Van Alstyne*, 584 F.3d 803, 819 (9th Cir. 2009). The district court did not plainly err in finding that Buchan was involved in the scheme from December 2011 to February 2012, and therefore ordering $519,400 in restitution and imposing joint and several liability.

**AFFIRMED.**

FILED

OCT 27 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*USA v. Kelen Buchan*, No. 19-50272

R. NELSON, Circuit Judge, with whom IKUTA, Circuit Judge, joins as to Part IV, concurring:

I join in full the court's memorandum disposition affirming the district court. I write separately because I would also hold that (1) the district court properly applied a preponderance standard to factual questions decided at sentencing; (2) our clear and convincing evidence rule (for factual findings that have an extreme impact on the sentence) is clearly irreconcilable with *Beckles v. United States*, 137 S. Ct. 886 (2017); and (3) regardless, the clear and convincing evidence rule should be reversed en banc because it is incorrect, unmoored from its original basis in the mandatory nature of the Guidelines, and contrary to the law of every other circuit.

I

Kelen Magael Buchan and his co-schemers participated in a scheme to scam money from victims. Buchan was charged with twenty-five counts of wire fraud and attempted wire fraud. He pleaded guilty to a single count of wire fraud.

At sentencing, the district court described the scheme as "over a half million dollars" of "money taken from senior citizens and their life savings and their retirement," as "about as aggravating as a fraud scheme as I've seen," and as so

"horrible" that "gang-on-gang violence to me is more understandable than something like this."

Buchan's indictment charged him with participation in a scheme that lasted for at least several months. But in his plea and at sentencing, he admitted only that he participated in the scheme for at least a few days.

"As a general rule, a preponderance of the evidence standard applies" to factual findings at sentencing. *United States v. Valle*, 940 F.3d 473, 479 (9th Cir. 2019). But when the Sentencing Guidelines were mandatory, this court, along with several others, adopted a due process rule requiring that factual findings with "an extremely disproportionate effect on the sentence relative to the offense of conviction" be proven by clear and convincing evidence. *United States v. Valensia*, 222 F.3d 1173, 1178–79 (9th Cir. 2000) (citing *United States v. Restrepo*, 946 F.2d 654 (9th Cir. 1991) (en banc) (*Restrepo II*), *judgment vacated by Valensia v. United States*, 532 U.S. 901 (2001). The district court applied a preponderance standard because it reasoned that its factual findings about the extent of the fraudulent scheme arose from the offense of conviction and therefore could not have "an extremely disproportionate effect on the sentence relative to the offense of conviction." *Valensia*, 222 F.3d at 1178–79.

Buchan argues that the district court should have applied the clear and convincing evidence standard.

## II

## A

"[W]here the sentencing enhancements are based on . . . the offense of conviction, the preponderance of the evidence standard is sufficient." *United States v. Hymas*, 780 F.3d 1285, 1289–90 (9th Cir. 2015) (alteration in original) (internal quotation marks omitted) (citing *United States v. Harrison-Philpot*, 978 F.2d 1520, 1524 (9th Cir. 1992)). We impose a higher burden of proof only "when the challenged sentencing factor had an extremely disproportionate effect on the defendant's sentence *relative to the offense of conviction*." *United States v. Parlor*, 2 F.4th 807, 816–17 (9th Cir. 2021) (cleaned up) (emphasis added) (citing *United States v. Jordan*, 256 F.3d 922, 927, 929 (9th Cir. 2001)). Only when the enhancement is not based on the offense of conviction may a higher burden of proof be imposed, *see, e.g.*, *Hymas*, 780 F.3d at 1291.

The question, then, is whether factual findings about the scope of wire fraud are findings that go to the offense of conviction. Circuit precedent in the context of conspiracy suggests that they do. Clear and convincing evidence is never required to prove the scope of a conspiracy because the scope of the conspiracy goes to "the nature and extent of the offense to which [the defendant] pled guilty." *United States v. Riley*, 335 F.3d 919, 926 (9th Cir. 2003).

3

Conspiracy requires proof of an overt act taken in furtherance of the conspiracy. *United States v. Gonzalez*, 786 F.3d 714, 718 (9th Cir. 2015). But the scope of a conspiracy is not confined to the facts admitted in a defendant's plea. Instead, once the underlying offense of a conspiracy has been proven, everything relating to "the extent of the conspiracy" is based on the offense of conviction and thus can be proven by a preponderance of the evidence at sentencing. *Riley*, 335 F.3d at 926.

The "offense of conviction" rule is not limited to the extent of a conspiracy: it applies to all crimes, including wire fraud. In *Valle*, 940 F.3d at 480 n.8, we noted that the rule applies "where a defendant has been convicted . . . as a participant in a fraudulent scheme and the extent of the . . . fraudulent scheme is the basis of the enhanced sentence." *See also United States v. Garro*, 517 F.3d 1163, 1168–69.

Like the conspiracy statute, the wire fraud statute does not criminalize each specific instance of wrongful conduct. The conspiracy statute criminalizes an agreement to pursue unlawful ends and an overt act in furtherance of the agreement. 18 U.S.C. § 371. Once these elements are proven, then other acts relating to the extent of the conspiracy are based on the offense of conviction. *Riley*, 335 F.3d at 926–27. In the same way, the wire fraud statute criminalizes knowing participation in a scheme or plan to defraud and use of the wires in

furtherance of that scheme or plan.  18 U.S.C. § 1343; Ninth Circuit Model Jury Instructions 8.124; *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013).  Once these elements are proven, then other acts relating to the extent of the fraudulent scheme are based on the offense of conviction, too.

*Hymas* says nothing to the contrary.  What *Hymas* says is that if a defendant pleads guilty and admits only one fraudulent transaction, then the court will not consider other transactions.  780 F.3d at 1291–92.  *Hymas* says nothing about defendants who admit schemes involving multiple transactions.

B

Buchan pleaded guilty to and admitted participating in an international scheme involving multiple transactions and multiple victims.  To be sure, in his plea agreement, he only admitted to participating in that scheme for "at least" four days.  But that makes no difference: the actual degree of his participation goes to the extent of the scheme, not to the fact of his participation itself.  Whether Buchan admitted participating in the scheme for four days, or four months, or four minutes didn't matter: Once he participated and used the wires one time in furtherance of it, he was guilty of wire fraud.  At that point, the extent of his participation in the fraudulent scheme became a fact based on his offense of conviction that could be proven at sentencing by a preponderance of the evidence.

5

## III

The government also argues that the clear and convincing evidence rule is clearly irreconcilable with *Beckles*, and therefore has been overruled. I agree.

### A

"[W]here the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003).

The clearly irreconcilable analysis does not focus solely on the issues or holdings of the cases. "Rather, the relevant court of last resort must have undercut the *theory or reasoning* underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Gonzalez v. Barr*, 955 F.3d 762, 768 (9th Cir. 2020) (emphasis added) (citing *Miller*, 335 F.3d at 900), *cert. granted sub nom Garland v. Gonzalez*, No. 20-322, 2021 WL 3711642 (Aug. 23, 2021). In evaluating whether our prior precedent has been overruled by intervening precedent, the court must consider the "overall analytical framework" of the case and "focus on the *reasoning* and *analysis* in support of a holding, rather than the holding alone." *Lair v. Bullock*, 697 F.3d 1200, 1206 (9th Cir. 2012) (citing *In re Flores*, 692 F.3d 1021, 1030–31 (9th Cir. 2012)).

6

To be sure, this court has also held that to be clearly irreconcilable, the intervening authority "would need to be so fundamentally inconsistent with our prior cases that our prior cases cannot stand" and that if the court "can apply [its] prior circuit precedent without running afoul of the intervening authority, [it] must do so." *In re Gilman*, 887 F.3d 956, 962 (9th Cir. 2018). But it is not just the holdings that must be fundamentally inconsistent: it is the cases' "reasoning and principles." *Id*. If this court's prior reasoning is clearly inconsistent with intervening precedent, then the case has been overruled, even if the holdings themselves do not expressly conflict.

B

In *Beckles*, the Supreme Court held that because the Guidelines "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range," they "are not amenable to a vagueness challenge" under the Due Process Clause. 137 S. Ct. at 892, 894. The Court's reasoning relied on the observation that "in the long history of discretionary sentencing, this Court has never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." *Id.* at 893 (internal quotation marks omitted) (citing *United States v. Booker*, 543 U.S. 220, 233 (2005)). The Court noted that "the system of purely discretionary sentencing that predated the Guidelines was constitutionally permissible." *Id*. at 894. The Court reasoned that

7

"[i]f a system of unfettered discretion is not unconstitutionally vague, then it is difficult to see how the present system of guided discretion could be." *Id*.

Of course, *Beckles* concerned a void-for-vagueness due process challenge. But the Supreme Court itself did not confine its reasoning to that context: On top of discussing other kinds of due process challenges, it even supported its reasoning with a similar case from the Eighth Amendment context. *Id*. at 895–96 (citing *Espinosa v. Florida*, 505 U.S. 1079, 1082 (1992) (per curiam)).

Every analytical element of the Supreme Court's reasoning applies directly to this court's clear and convincing evidence rule. District judges are now free to sentence anywhere within the statutory range, with or without making any additional factual findings. "If a system of unfettered discretion is not unconstitutional[]" when there are no factual findings at all, "then it is difficult to see how the present system of guided discretion could be." *Id*. The Supreme Court's exact reasoning, principles, and analytical framework all apply here.

Before the Sentencing Guidelines existed, a defendant's due process rights were violated "when a court relie[d] on extensively and materially false evidence to impose a sentence on an uncounseled defendant." *Id.* at 896 (internal quotation marks omitted) (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948)). This rule is still good law because it did not depend on the mandatory nature of the Guidelines. Now that they are advisory, *Beckles* means that due process rules rooted in the

8

mandatory nature of the Guidelines are no longer valid. That reasoning applies here: this court's clear and convincing evidence rule is rooted in the mandatory nature of the Guidelines, is clearly irreconcilable with the Supreme Court's reasoning and analysis in *Beckles* and has been overruled.

## IV

In the alternative, the clear and convincing evidence rule should be reversed en banc because it is incorrect, unmoored from its original basis in the mandatory nature of the Guidelines and contrary to the law of every other circuit.

## A

The origin of the clear and convincing evidence rule line of cases is *McMillan v. Pennsylvania*, 477 U.S. 79 (1986), which held that due process did not require a sentencing enhancement to be proven by anything more than a preponderance of the evidence. In dicta, the Court observed that the sentencing provision at issue in that case—a state enhancement for visible possession of a firearm—"gives no impression of having been tailored to permit the visible possession finding to be a tail which wags the dog of the substantive offense." *Id*. at 88.

A few years later, in *United States v. Kikumura*, the Third Circuit confronted a sentencing enhancement that increased the sentence "from about 30 months to 30 years." 918 F.2d 1084, 1100 (3d Cir. 1990), *overruled by United States v. Fisher*,

9

502 F.3d 293, 305–07 (3d Cir. 2007). The Third Circuit observed that this enhancement was "perhaps most the dramatic example of a sentence hearing that functions as a tail which wags the dog of the substantive offense" and held "that in such situations, the factfinding underlying that departure must be established at least by clear and convincing evidence." *Id*. at 1100–01 (citing *McMillan*, 477 U.S. at 88) (internal quotation marks omitted).

We first noted the possibility of such a potential due process requirement the next year in *Restrepo II*, 946 F.2d at 660–61, but did not hold that there was such a requirement until eight years later in *United States v. Hopper*, 177 F.3d 824, 833 (9th Cir. 1999).

After again applying the clear and convincing test in *United States v. Mezas de Jesus*, 217 F.3d 638, 642–43 (2000), we laid out several factors to guide the inquiry into whether a factual finding has an extremely disproportionate effect on a sentence in *United States v. Valensia*, 222 F.3d at 1181–82.

The Supreme Court vacated *Valensia* after *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in which the Court held that facts increasing the maximum statutory penalty for a crime must be submitted to the jury and proven beyond a reasonable doubt. Still, we continued to use what we began to call "the six *Valensia* factors" as a framework to determine whether clear and convincing evidence was required. *United States v. Jordan*, 256 F.3d 922, 928–29 (9th Cir. 2001).

10

The clear and convincing evidence rule and the *Valensia* factors became entrenched in our case law and were cited and applied many times. *See, e.g.*, *United States v. Peyton*, 353 F.3d 1080, 1088 (9th Cir. 2003), *overruled on other grounds by United States v. Contreras*, 593 F.3d 1135 (9th Cir. 2010); *United States v. Bonilla-Montenegro*, 331 F.3d 1047, 1050 (9th Cir. 2003).

Still, until the mid-2000s, this court had "applied the disproportionate impact test only in the case of sentence enhancements." *United States v. Gonzalez*, 365 F.3d 796, 799 (9th Cir. 2004). That was the status of this court's rule in 2005, when the Supreme Court decided *Booker* and held that the Sentencing Guidelines were merely advisory.

B

When *Booker* was decided, three other circuits had adopted the clear and convincing evidence rule. All three have now held via three judge panel that the rule was overruled by intervening Supreme Court precedent: *Booker*.

The Third Circuit held that "concerns about the tail wagging the dog were valid under a mandatory guideline system" but had been "put to rest when *Booker* rendered the guidelines advisory." *Fisher*, 502 F.3d at 305. The Seventh Circuit held that the "debate" over *McMillan* had been "rendered academic" by *Booker*, and that "[w]ith the guidelines no longer binding the sentencing judge, there is no need for courts of appeals to add epicycles to an already complex set of (merely)

11

advisory guidelines by multiplying standards of proof." *United States v. Reuter*, 463 F.3d 792, 793 (7th Cir. 2006). And the Eighth Circuit concluded that *Booker* "dramatically altered [the] landscape" of the sentencing guidelines and that it "eliminate[d] any due process concern requiring a heightened standard of proof for fact findings that have an extremely disproportionate impact on the defendant's *advisory* guidelines sentencing range." *United States v. Villareal-Amarillas*, 562 F.3d 892, 897–98 (8th Cir. 2009).

This court, on the other hand, held that the clear and convincing evidence rule survived *Booker* in *United States v. Staten*, 466 F.3d 708, 717–720 (9th Cir. 2006). And in *Staten*, we boldly *extended* the rule's application from just factual findings underlying sentencing enhancements to *all* factual findings made at sentencing that have an extremely disproportionate effect on the ultimate sentence. *Id*. at 720.[1]

Since *Staten*, only this court has continued to apply a clear and convincing evidence standard to factual questions decided at sentencing that have an extremely disproportionate effect on the ultimate sentence. *See, e.g.*, *Valle*, 940 F.3d at 480–81; *United States v. Pineda-Doval*, 614 F.3d 1019, 1041 (9th Cir. 2010).

---

[1] In extending the rule, the *Staten* court relied only on *Kikumura* and other cases discussed above; it cited no example of the Ninth Circuit applying the clear and convincing evidence rule to a factual finding underlying a departure, rather than the application of a sentencing guideline. *Id*. at 719-20.

12

*Staten* was wrongly decided. The court in *Staten* relied on faulty reasoning. The court acknowledged that the "general baseline" for findings of fact at sentencing was "the preponderance of the evidence standard." *Staten*, 466 F.3d at 720. Still, the court held that its prior clear and convincing cases survived *Booker* because those cases "focused on the *actual* effect a given fact had on the sentence that the district court ultimately imposed, not on whether the district court was *required* to give a fact it found the effect it did." *Id*.

This reasoning elides the fact that those decisions all relied on the Guidelines' mandatory nature. *Kikumura* and all this court's previous cases in this line relied on the mandatory nature of the Guidelines. *See Fisher*, 502 F.3d at 305–06 ("*Kikumura*'s holding was predicated on the then-mandatory nature of the Guidelines . . . The critical distinction [now] is the advisory nature of the Guidelines.").

*Kikumura* concerned factual findings made in support of an upwards departure from the mandatory Guidelines range. 918 F.2d at 1097–98. The *Staten* court characterized the "reliance on disputed facts [in *Kikumura* as] discretionary rather than mandatory." 466 F.3d at 719. And it's true that even when the Guidelines were mandatory, district judges had discretion to depart upwards. But the *Staten* court missed the point: What was mandatory was not the departure, but the Guidelines range itself.

That the guidelines were mandatory was the basis for the clear and convincing evidence rule. Here's why: In a case like *Kikumura*, the district court had to sentence the defendant within the Guidelines range, except if it departed upwards. So the factual findings underlying the upward departure were the only thing standing between a mandatory, lower Guidelines-range sentence and the higher, departed sentence. Without those factual findings, the district court would have had to choose a sentence within the Guidelines range. It is in that sense that the Guidelines were mandatory.

Now that the Guidelines are advisory, district courts have discretion to sentence anywhere within the entire statutory range, full stop. And "facts found at sentencing merely inform the judge's discretion; they do not increase the maximum sentence to which a defendant is otherwise exposed." *Villareal-Amarillas*, 562 F.3d at 898. Accordingly, factual findings at sentencing cannot logically lead to a sentence that is "extremely disproportionate" relative to the mandatory sentence that would be imposed absent the factual finding, *Staten*, 466 F.3d at 717, because there is no longer any mandatory Guideline sentence at all. Rather, the only "mandatory" range remaining after *Booker* is the statutory range. As long as the ultimate sentence falls within that range and meets all other requirements, a district court could sentence well beyond the Guidelines range without making *any* additional factual findings. The reasoning of the clear and

convincing evidence rule rested on the mandatory nature of the Guidelines: That's why every other circuit got rid of the rule once the Guidelines became advisory. We should follow suit, en banc if necessary.